437 A.2d 7

**Joan M. BOND, Appellant,**

v.

**Charles B. GALLEN.**

Superior Court of Pennsylvania.

Argued June 25, 1981.

Filed Oct. 16, 1981.

Petition for Allowance of Appeal Granted March 16, 1982.

Matthew S. Donaldson, Jr., Media, for appellant.

Stephen C. White, Media, for appellee.

Before CERCONE, P. J. and SPAETH, HESTER, WICK-ERSHAM, BROSKY, DiSALLE, JOHNSON, POPOVICH, and SHERTZ, JJ.

SPAETH, Judge:

■ This is an appeal from an order granting a motion for judgment on the pleadings. The issue is when the two year limitations period starts to run in a case arising from a motor vehicle accident where the right to bring a tort action is limited by the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 *et seq.* In *Donnelly v. DeBourke*, 280 Pa.Superior Ct. 486, 421 A.2d 826 (1980), we held that the limitations period starts to run on the date of the accident. However, it does not appear that the court in *Donnelly* was asked to consider the significance of *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975). We therefore ordered reargument of

this case before the court en banc in order to reconsider our decision in *Donnelly* in light of *Singer.* We now overrule *Donnelly* and hold that the two year limitations period does not start to run until the claimant knows or in the exercise of reasonable diligence should have known that one of the thresholds specified in section 301(a) of the No-fault Act had been reached.

■ The facts of this case are quite simple. Appellant was injured on February 3, 1977, when the automobile she was driving was struck by an automobile driven by appellee. Appellant did not file her complaint until more than two years later, on April 12, 1979. However, in her complaint she detailed the course of treatment for the injuries she suffered in the accident, alleging that it was not until December 2, 1978, that she first believed that her medical expenses would exceed $750, and not until sometime after December 17, 1978, when she was admitted to a hospital for surgery, that her expenses actually did exceed $750. Appellee filed an answer to the complaint with new matter alleging that appellant's claim was barred by the statute of limitations, and then filed a motion for judgment on the pleadings, which by order of April 21, 1980, the lower court granted. This appeal followed.

At this stage we must take appellant's allegations as true. *Engel v. Parkway Company,* 439 Pa. 559, 266 A.2d 685 (1970). Accordingly, the case may be summarized by saying that while appellant's complaint was filed more than two years after the accident, it was filed less than two years, specifically, only four months, after appellant met a no-fault threshold allowing tort recovery.

In *Singer v. Sheppard, supra,* the Supreme Court held that the No-fault Act does not violate Article 1, Section 11, and Article 3, Section 18, of the Constitution of Pennsylvania because, instead of *limiting* the damages recoverable in a tort action, the Act *abolishes* the right to recover *any* damages, unless the claim falls within one of the exceptions contained in section 301(a). *Id.* 464 Pa. at 397, 346 A.2d at 902–03. The Court interpreted the Constitution as requiring

only that *when a cause of action exists,* access to the courts may not be restricted nor damages limited. The Constitution, said the Court, does not deprive the General Assembly of the power to *abolish* a cause of action. Thus, when we are asked to decide when the statute of limitations starts to run, we must give an answer consistent with the Court's interpretation of the No-fault Act as not a limitation on a remedy but as an abolition of a cause of action.[1] Upon reflection, it is clear that the holding in *Donnelly v. De-*

1. The dissent argues that we should give no weight to *Singer* because no Justice joined the lead opinion, written by then Chief Justice JONES. Dissenting op. at 15. However, the concurring opinions, written by Justice ROBERTS, joined by Justice POMEROY, and by Justice NIX, make clear that they too, like the Chief Justice, regarded the No-fault Act as an exercise of the Legislature's power to create and abolish causes of action. Justice ROBERTS wrote:

> [Article III, section 18 of the Pennsylvania Constitution] does not limit the power of the Legislature to create or abolish causes of action; . . .
> Section 301(a) of the No-fault Act does not place a maximum dollar limitation on the amount of damages that are otherwise recoverable by a person injured in a motor vehicle accident. Rather, *it specifies in what circumstances a person has a cause of action* for injuries received in a motor vehicle accident . . .

*Singer v. Sheppard, supra* 464 Pa. at 415–16, 346 A.2d at 911–12 (ROBERTS, J., concurring) (footnote omitted; emphasis added). Similarly, Justice NIX wrote:

> The law is clear that the General Assembly has the power to abolish common law causes of action . . . . [T]he legislature *recognized the desirability of eliminating the common law cause of action* for pain and suffering from injuries resulting from automobile accidents.

*Id.,* 464 Pa. at 418, 346 A.2d at 912–913 (NIX, J., concurring) (citation omitted; emphasis added).
If there could otherwise be any doubt that the three opinions upholding the constitutionality of the No-fault Act all agreed that the Act was constitutional only because it abolished a cause of action rather than limiting damages, it is dispelled by Justice MANDERINO's dissenting opinion:

> The opinion of Mr. Chief Justice JONES and the concurring opinions agree that, without the people's approval, the legislature cannot put a maximum dollar amount on damages recoverable by citizens for injuries. Yet, it is contended that this proposition does not prevent the abolition of a cause of action.

*Id.,* 464 Pa. at 420, 346 A.2d at 914 (MANDERINO, J., dissenting). When four of the seven Justices write or join opinions that agree on a proposition of law, that proposition does carry the authority of the Court, and we are bound by it.

*Bourke, supra,* is not consistent with *Singer.* To say, as *Donnelly* did, that the statute of limitations starts to run from the date of the accident, even when none of the No-fault Act's thresholds has been reached, is to say that the statute starts to run from a date on which, and even though, the cause of action did not exist.

This point may perhaps be made clearer by imagining a dialogue between a trial judge required to follow the holding of *Donnelly* and a disappointed claimant. Suppose the accident was on January 1, 1978, but the $750 threshold was not reached until February 1, 1980. Judge: "Your claim is barred because the statute of limitations started to run on January 1, 1978." Claimant: "But under *Singer* I didn't have any cause of action on January 1, 1978. In fact, I didn't get a cause of action until February 1, 1980. By then, according to you, the statute had already run." Judge: "That's true, and it's too bad. What you should have done is, before the statute had run, file a claim saying that although you had no cause of action, because the $750 threshold hadn't been reached, maybe you would have one, because maybe the threshold would be reached. That way you would have protected yourself." Although stated in colloquial language, this dialogue fairly summarizes the holding in *Donnelly.*

This holding is unacceptable for two reasons: First, it cannot be supposed that in enacting the No-fault Act, the General Assembly intended such a result. In this regard it may be noted that although *Donnelly* does discuss policy considerations favoring its result, it cites no provisions of the Act in support of its conclusions.[2] Second, the result is

2. Donnelly does cite cases from other states holding that the statute of limitations runs from the date of the accident. *Carter v. Cross,* 373 So.2d 81 (Fla.Dist.Ct.App.1979); *Key v. Clegg,* 4 Kan.App.2d 267, 604 P.2d 1212 (1980); *Dinesen v. Towle,* 3 Kan.App.2d 505, 597 P.2d 264 (1979); *Cappadona v. Eckelmann,* 159 N.J.Super. 352, 388 A.2d 239 (App.Div.1978). An examination of these cases will disclose, however, that in none of them is the no-fault act in question analyzed in the way in which our act was analyzed in *Singer.* Instead, in all of these cases the no-fault act is analyzed as providing limitations on recovery and qualified immunities for liability, not as

unjust and unnecessary. Why should such a claimant be barred? What sense does it make to tell claimants—*i. e.*, tell their lawyers—that to protect themselves, they must file fictitious, precautionary, claims? How can such claims be reconciled with Pennsylvania's system of fact pleading—not to mention, with simple honesty?

It is true that the present case is not quite so dramatic as the case just supposed. For here the threshold was reached twenty-two months after the accident, instead of twenty-five. In other words, here we could say to appellant: "You

abolishing a cause of action. This difference in analysis is illustrated most vividly by *Cappadona v. Eckelmann, supra,* which is also the case that *Donnelly* quotes at some length. According to *Cappadona,* "The tort exemption provision, N.J.S.A. 39:6A–8, is no more than an affirmative defense to be pleaded and proved by the party favored by it." 159 N.J.Super. at 357, 388 A.2d at 242. The court specifically found that the New Jersey no-fault act provided exemption from liability, not from suit, and that failure to meet the no-fault threshold was therefore not a jurisdictional defect. Thus, if the exemption from liability is not pleaded by the defendant, a tort suit following an automobile accident may lead to a valid judgment even if the threshold has not in fact been met. The court also pointed out that because the threshold in New Jersey is so low—only $200—and because it is only necessary that it be met by the time of trial, it will be only a very rare case where the threshold has not been met in two years plus the time it takes for the case to come to trial, but is met later.

So far as Pennsylvania cases before *Donnelly* are concerned, the courts of common pleas have disagreed on whether it is necessary to meet a no-fault threshold before filing suit. *Compare:*

No useful purpose would be served by requiring a plaintiff actually to have incurred $750 in medical expenses before filing suit if it can be fairly alleged that the medical expenses are reasonably expected to be in excess of the threshold amount. A contrary ruling would not only raise problems with respect to the statute of limitations but might encourage early, excessive or unnecessary treatment.

*Mabey v. Michkens,* 7 D. & C.3d 792, 1 Phila. 355, 357–58 (1978). *Accord, O'Sullivan v. Ruszecki* 2 D. & C.3d 276 (Allegheny Co. 1977); *Theal v. Confer,* 7 D. & C.3d 614 (Perry Co. 1978). *With:*

[W]e find that the legislative debates leading up to the passage of the No-Fault Act fully considered the $750 threshold criterion [footnote omitted], and intended such to be met before the institution of suit.

*Gleeson v. Belkin,* 9 D. & C.3d 499 (Phila.Co.1980) (omitted footnote discusses examples of legislative history.)

*Accord, Kubushefski v. Kleinot,* 8 D. & C.3d 599 (Phila.Co.1979). However, all of the cases appear to agree that a claimant must in some way plead exemption from the No-Fault Act's abolition of tort liability. This requirement is consistent with Singer but in sharp contrast to New Jersey practice as explained in *Cappadona.*

knew two months before the statute ran that you had a cause of action. It was therefore up to you to file your claim within those two months." This answer, however, will not withstand examination. For the fact remains that it cannot be supposed that the General Assembly intended thus to constrict a claimant's right to assert a cause of action. Suppose the threshold is reached one month before the statute—according to *Donnelly*—runs. Did the General Assembly intend that unless the claimant asserts the cause of action within that one month, the cause is barred? Suppose the threshold is reached two weeks before the statute—according to *Donnelly*—runs. One week. One day.

Thus, in every case, *Donnelly's* answer to the claimant is the same: "Your cause of action is barred unless you assert it within two years of the date of the accident, and this is so *no matter when* you reach the threshold, whether two months before the two year period expires, or one month, two weeks, one week, one day, or even afterwards."

Given that when reexamined in the light of *Singer, Donnelly* is not acceptable, the question becomes: "How, then, should the limitations period be computed?" We believe, and now hold, that the limitations period does not start to run until the claimant knows or in the exercise of reasonable diligence should have known that one of the section 301(a) thresholds had been reached, in other words, until the claimant has a cause of action that can be pleaded, consistent with the fact-pleading requirements of Pa.R.C.P. 1019(a).[3] *Donnelly v. DeBourke, supra* is overruled.[4]

3. The dissent expresses concern that to hold that a cause of action does not accrue until a No-fault threshold has been met may mean that there may be no recovery for non-economic detriment incurred prior to that point. Dissenting op. at 15. As that question is not before us, we need not decide it today. However, even if the dissent is right, it is far from clear that such a result would be contrary to the intent of the No-fault Act. If a No-fault threshold is never reached, damages for non-economic detriment can never be recovered. In the case of a major accident a No-fault threshold will be met almost immediately, possibly even before the victim reaches the hospital. It is difficult to imagine a case where there would be great pain and suffering before a threshold was met but not afterwards; in

4. See note 4 on page 214.

We recognize that this result is not entirely satisfactory, for cases may occur where the threshold is reached only after many years. Such cases, however, will be rare, and in any event, the difficulty they present may readily be avoided by the General Assembly. For example, the General Assembly could enact a statute of repose similar to the Act of July 9, 1976, P.L. 142, § 2, as amended, 42 Pa.C.S.A. § 5536, which provides that after 12 years, an action based on a defect in the design or construction of any improvement to real property is barred, regardless of when the defect was discovered or discoverable or the injury occurred. In this regard, it should be noted that neither a statute of repose nor a limitations period triggered by an event subsequent to the date of the accident is foreign to the No-fault Act as it now exists. Section 106(c)(1) provides, in part:

> If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

any event, the calculation of damages for pain and suffering is, at best, not very precise.

4. The dissent suggests that we should attach some weight to the fact that *Donnelly* "has withstood a Petition for Allowance of Appeal." Dissenting op. at 16. However, an order denying a petition for allowance of appeal does not constitute or imply an endorsement by the Supreme Court of the position taken by the Superior Court or the Commonwealth Court; it is instead a discretionary order, and of no precedential value. Pa.R.A.P. 1114 provides that "review of a final order of the Superior Court or the Commonwealth Court is not a matter of right, but of sound judicial discretion, and an appeal will be allowed only when there are special and important reasons therefor." The Note to the Rule states that the Rule is "[b]ased on U.S. Supreme Court rule 19 [now renumbered Rule 17]," which states the considerations that govern discretionary review by the United States Supreme Court on writ of certiorari. It is settled that an order entered pursuant to Rule 19 denying a petition for writ of certiorari is of no precedential value. *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950).

The four year period is a statute of repose; the two-year period is triggered by an event subsequent to the accident. Although by its very nature a limitations period triggered by an event subsequent to the accident is less certain than one triggered by the accident itself, this fact does not present any problem that has not been overcome in other cases in the development of the discovery rule. *See e. g., Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959); *Anthony v. Koppers Company, Inc.*, 284 Pa.Superior Ct. 81, 425 A.2d 428 (1980). Finally, the No-fault threshold that has attracted the most attention—the requirement of $750 in medical expenses—is itself stated in terms of "the reasonable value of reasonable and necessary medical and dental services, . . ." 40 P.S. § 1009.301(a)(5)(B). There is no provision that for the threshold to be met, the medical and dental services must have been billed or paid for. Thus a claimant may not defer the date the limitations period starts to run by, for example, being slow in paying for medical treatment.

The order of the lower court granting appellee's motion for judgment on the pleadings will therefore be reversed and the case remanded for further proceedings. If it should appear, either on motion for summary judgment or at trial, that appellant did not file her action within two years after she knew or in the exercise of reasonable diligence should have known that a no-fault threshold had been reached, the action should be held barred. Otherwise, it should be held to lie.

The order of the lower court is reversed and the case remanded for further proceedings consistent with this opinion.

JOHNSON, J., files a dissenting opinion, in which CERCONE, P. J., joins.

JOHNSON, Judge, dissenting:

The majority seeks to overrule the decision of this Court in the case of *Donnelly v. DeBourke*, 280 Pa.Super.Ct. 486, 421 A.2d 826 (1980), *appeal by allowance denied* 667 E.D. Misc. Docket 1980 (Pa. February 27, 1981) and, thereby, to

change existing law fixing the limitations period for instituting an action in tort due to injuries arising out of motor vehicle accidents. The majority would hold that the limitations period in minor accident claims does not start to run until a claimant knows, or in the exercise of reasonable diligence should have known, that the monetary threshold, as set forth in Section 301(a) of the Pennsylvania No-fault Motor Vehicle Insurance Act[1] (presently $750) has been reached.

Since I believe that *Donnelly v. DeBourke* was correctly decided, and since a review of the relevant case law and statutes does not seem to support the views of the majority, I must respectfully dissent.

The No-fault Act was passed by the General Assembly, to become effective on July 19, 1975, upon a finding by the legislature that:

> "(8) throughout the Commonwealth there should be uniformity as to the essential elements of the system of motor vehicle accident and insurance law to avoid confusion, complexity, uncertainty, and chaos which would be engendered by a multiplicity of noncomplementary systems..."[2]

A key feature of the Act was the abolition of tort liability, as set forth in Section 301(a), except in certain very specific situations described thereunder. One area of tort liability retained after the passage of the Act was for damages for non-economic detriment if the accident resulted, *inter alia*, in (a) death or serious and permanent injury[3]; or (b) reasonable and necessary medical and dental services, with certain exclusions, in excess of $750.[4]

In the instant case, Appellant was injured on February 3, 1977 as a result of a rear end collision in Delaware County.

1. Act of July 19, 1974, P.L. 489, No. 176, eff. in 12 months, 40 P.S. §§ 1009.101 *et seq.* (1981–1982 Supp.).

2. *Id.*, Art, I, § 102(a)(8), 40 P.S. § 1009.102(a)(8).

3. *Id.*, Art. III, § 301(a)(5)(A), 40 P.S. § 1009.301(a)(5)(A).

4. *Id.*, § 301(a)(5)(B), 40 P.S. § 1009.301(a)(5)(B).

She sustained an internal disarrangement of the right knee, a whiplash injury to the right side of her neck, and an injury to her lower lumbar spine resulting in a slipped disc. As of July 10, 1978, Appellant's medical expenses totalled $361. She was next treated on October 26, 1978 and presumably incurred additional expenses both on that date and again on December 2, 1978 when she underwent an EMG at the Mercy Catholic Medical Center in Darby, Pa. It is undisputed that her expenses exceeded the threshold sum of $750 soon after December 17, 1978, when she was admitted to Mercy Catholic for surgery, and certainly no later than December 29, 1978.

In spite of this, Appellant did not file her complaint in trespass until April 12, 1979, some two years and two months following the date of her injuries. In the complaint, she alleged she had both received "grievous and permanent injuries" and incurred medical expenses "in excess of $750.00."

The Defendant, after the pleadings were closed, filed a Motion for Judgment on the Pleadings, contending that the action was barred by the statute of limitations imposed upon personal injury actions by the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 5524, which provides:

"§ 5524. *Two year limitation*

The following actions and proceedings must be commenced within two years:

. . . . .

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

. . ."

This section must be read in conjunction with 42 Pa.C.S.A. § 5502, another section of the same Judiciary Act of 1976,[5] which provides:

5. Act of July 9, 1976, P.L. 586, No. 142, generally effective June 27, 1978, 42 Pa.C.S.A. §§ 101 *et seq.*

*"§ 5502. Method of computing periods of limitation generally*

(a) *General rule.*—The time within which a matter must be commenced under this chapter shall be computed, except as otherwise provided by subsection (b) or by any other provision of this chapter, from the time the cause of action accrued, the criminal offense was committed or the right of appeal arose.

. . ."

The lower court rejected Appellant's contention that her cause of action "accrued" on the date she knew or should have known "legal" injury had been sustained, that is, on the date when she knew the "facts" upon which her cause of action was based, and granted the Defendant's Motion for Judgment on the Pleadings, whereupon she brought this appeal.

At the time the Appellant's injury occurred in 1977, the applicable statute of limitations, enacted and in effect since 1895, required that suit to recover damages be brought "within two years from the time when the injury was done and not afterwards." [6] But for the passage of the Judiciary Act of 1976 and the Judiciary Act Repealer Act [7] in 1978, which resulted in the repeal of the 1895 statute of limitations, there would be no question but that Appellant's claim would be barred. As recognized by Judge PRICE in *Donnelly v. DeBourke, supra,* the two year period of the statute of limitations in automobile accident personal injury cases has traditionally begun on the date the injuries were sustained. *See, e. g. Coyne v. Porter-Hayden Co.,* 286 Pa.Super.Ct. 1, 5, 428 A.2d 208, 209 (1981) (dictum); *cf. Hruska v. Gibson,* 316 Pa. 518, 175 A. 514 (1934).

It is important to recognize that the 1895 statute of limitations was in effect throughout the period when the no-fault legislation was under consideration by the General

**6.** Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34; repealed, Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [807], effective June 27, 1978.

**7.** Act of April 28, 1978, P.L. 202, No. 53, 42 Pa.C.S.A. §§ 20001–20004.

Assembly and remained in effect for a period of nearly four years following passage of the No-fault Act[8] and nearly three years after its effective date.[9] Thus, in the absence of any legislative history to the contrary, it may reasonably be assumed that the legislature was aware of the effect of the 1895 statute upon minor injury claims and the necessity to file any such claims within the long-established two-year period.

Since the injury occurred prior to the effective date of the new statute of limitations, but the complaint was filed after that effective date, it must preliminarily be determined which statute controls. While substantive rights are settled as of the time the cause of action arises, rights in procedural matters are determined by the law in force at the time of the institution of the action. *Bell v. Koppers Co., Inc.*, 481 Pa. 454, 458–59, 392 A.2d 1380, 1382–83 (1978); *Sussman v. Yaffee*, 443 Pa. 12, 15, 275 A.2d 364, 366 (1971). The statute of limitations is an affirmative defense, to be raised ordinarily as New Matter, and merely operates as a bar to the plaintiff proceeding with a claim and, therefore, must be deemed to be procedural in nature.

Having determined that 42 Pa.C.S.A. §§ 5502 and 5524 are the applicable statutes for disposition of Appellant's claim, we now must consider whether the legislature intended to effectuate a radical change in the long-established law concerning the "fact" which triggers the statute of limitations in automobile accident personal injury cases by the adoption of the Judicial Code of 1976.

We are guided in our review of 42 Pa.C.S.A. § 5502 by the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1921, which provides:

"§ 1921. *Legislative intent controls*

(a) . . .

(b) . . .

8. July 19, 1974.

9. July 19, 1975.

(c) When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be obtained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute."

The Judicial Code bills had been drafted by the Pennsylvania Bar Association Special Committee on the Judicial Code in cooperation with a similar committee of the Pennsylvania Conference of State Trial Judges. It was only after submission of the proposed bills to the General Assembly that it determined to utilize the bills "as a vehicle to rationalize and simplify the statutes of limitation." [10]  This was done by bringing together, in one place [11], most of the various statutes of limitation which had theretofore been located throughout the statutes. In so doing, 42 Pa.C.S.A. § 5502 became the general statute for computing periods of time, not only in both civil and criminal matters but also in appeals. A portion of the language contained in the new § 5502 may have been derived from an 1897 statute dealing with fraudulent debtors' attachments [12], but one must suppose that the legislature was seeking to achieve an omnibus statute which would replace all of the older statutes relating to computations of time without working a change in their effect. There is nothing in the Judicial Code, or its amendments, to suggest otherwise.

**10.** *Pennsylvania Bar Association, Judicial Code Explanation,* 42 Pa.C. S.A. XI, at XV.

**11.** The Judicial Code, Chapter 55, 42 Pa.C.S.A. §§ 5501 *et seq.*

**12.** Act of June 8, 1897, P.L. 136, § 2, 12 P.S. § 50, See Table 2 Derivation, 42 Pa.C.S.A. XCIX, at CXXIX.

The object of the legislature was to simplify the law, and not to change it, so far as limitations of actions in personal injury cases were concerned. So far as my review of the legislative history has revealed, there was no mischief which the General Assembly sought to remedy in this area. Had the legislature intended to change the result which had obtained under the 1895 statute of limitations, they would, and could, have said so in unmistakable terms.

Were we to give to § 5502 the interpretation which the majority suggests, it would result in the effective reinstatement of a whole class of minor injury cases which the legislature, in its wisdom, has only so recently abolished! I am not disposed to engage in this type of judicial legislation.

Both the majority and Appellant, in her brief, contend that the holding in *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975) requires that § 5502 be interpreted to create a "moving" statute of limitations under § 301(a) of the No-fault Act. I cannot agree. In *Singer*, the opinion was authored by Chief Justice Jones (since deceased), but it does not appear that any other justice joined in that opinion. Justice Roberts, in a concurring opinion, concurred "in the judgment sustaining the constitutionally of section 301(a)." *Id.*, 464 Pa. at 415–17, 346 A.2d at 911–12. Justice Pomeroy (since retired) joined Justice Roberts except as to certain matters not relevant here. *Id.*, 464 Pa. at 417, 346 A.2d at 912. Justice Nix merely agreed "with the result reached by the majority." *Id.*, 464 Pa. at 417–20, 346 A.2d at 912–914. Justices Eagen (since retired), O'Brien and Manderino (since deceased) all filed separate dissents. *Id.*, 464 Pa. at 408–15, 420–21, 346 A.2d at 907–911, 914.

At no point were four justices of the court in sufficient agreement to support the analysis of *Singer* that is set forth in the majority opinion. In considering whether or not *Donnelly* is consistent with *Singer*, the most that can be said about *Singer* is that, on the vote of four justices of the court, § 301(a) of the No-fault Act was found not to violate either the state or federal Constitution.

An opinion of the supreme court, disposing of an appeal but not representing the view of a majority of the court, is not decisional and, therefore, not binding. *Commonwealth v. Davenport,* 462 Pa. 543, 559 n.3,, 342 A.2d 67, 75 n.3 (1975); *Commonwealth v. Silverman,* 442 Pa. 211, 218, 275 A.2d 308 n.8, 312 n.8 (1971); *U.S. cert. denied, Pennsylvania v. Silverman,* 405 U.S. 1064, 92 S.Ct. 1490, 31 L.Ed.2d 794 (1972). I would submit that the holding in *Singer* is limited to the finding that the No-fault Act is constitutional. I therefore cannot subscribe to the majority's contention that *Donnelly* is not consistent with *Singer.*

Some guidance on this computation issue may be achieved by recognizing the results reached in our sister states. My conclusion that the statute of limitations begins to run on the date the injury-causing event occurs has been reached in the only other jurisdictions which have faced this question.[13] *See Taber v. Niagara Frontier Transit Authority,* 101 Misc.2d 92, 420 N.Y.S.2d 692 (Sup.Ct. 1979), *aff'd,* 78 App. Div.2d 775, 435 N.Y.S.2d 551 (1980); *Carter v. Cross,* 373 So.2d 81 (Fla.Dist.Ct.App. 1979), *cert. denied* 385 So.2d 755 (Fla.1980); *Dinesen v. Towle,* 3 Kan.App.2d 505, 597 P.2d 264 (1979), *rev. denied,* 226 Kan. 792 (1979); *Cappadona v. Eckelmann,* 159 N.J.Super. 352, 388 A.2d 239 (Super.Ct.App. Div. 1978).

Each of these cases has determined that the applicable statute of limitations, in a tort action arising out of a no-fault statute, begins to run, *and the cause of action accrues,* as of the date of the *accident.*

I foresee a problem with the majority's analysis concerning damages. If the cause of action does not accrue until the threshold has been met, what happens to the non-economic detriment which would have been incurred prior to that date? If, as the majority would argue, there is no cause

13. As of 1979, twenty-five states and Puerto Rico had enacted no-fault legislation, with Illinois having thereafter declared their law unconstitutional. Of the remaining twenty-four states and Puerto Rico, only the four jurisdictions cited have raised the issue here under consideration. *See* Zittrain, "Whose Fault is No-Fault?", 41 Pitt.L.R. 27 (1979).

of action prior to reaching the monetary threshold, then no legal detriment could have been incurred. Is the claimant then limited to recovering for pain and suffering as calculated only from the threshold date? This would be the type of absurd and unreasonable result which the General Assembly could not have intended.[14]

It is true that in certain exceptional circumstances as, for example, medical malpractice cases, a "moving" statute of limitations has been approved. *See e. g., Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959); *Anthony v. Koppers Co., Inc.,* 284 Pa.Super.Ct. 11, 425 A.2d 428 (1980). However, there appears to be no legal justification for the application of this so-called "discovery rule" in the instant situation. A plaintiff invoking the discovery rule to delay the commencement of the statute of limitations must allege facts which show why the action could not have been brought earlier. *Coyne v. Porter-Hayden Co., Id.,* 286 Pa.Super. at 7, 428 A.2d at 210. Here, Appellant admits that the injuries were manifested on the date of the injury, alleges serious and permanent injuries, and was fully aware of having passed the threshold sum almost two months before the statute had run.

We are not here concerned with a hidden or latent injury. The injuries which Appellant sustained first manifested themselves on February 3, 1977, and she had a right to maintain an action from that date, subject only to her being able to prove minimal medical expenses at the appropriate time. We are not concerned, either, with Appellant's ability to recover her net losses which are protected by other pertinent sections of the No-fault Act.

I am convinced that the legislature enacted no-fault as a means of providing compensation for injured persons in lieu of their filing lawsuits for damages in cases involving small sums of money or minor injuries. The majority would destroy this legislative intent on the pretext that consistency with our prior case law cannot otherwise be maintained. Moreover, they would overrule the decision of this court in

14. Cf. Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1922.

*Donnelly v. DeBourke* which first considered this issue and which has withstood a Petition for Allowance of Appeal. I am not prepared either to usurp the power of the legislature or to treat lightly the well-reasoned opinion of my colleague, Judge PRICE.

Therefore, I must dissent.