## DeMarco v. Napora

*William R. Caroll and Eugene E. Fike, II,* for plaintiffs.

*Frank A. Orban, Jr.,* for defendants Napora.

*Gregory Frantz,* for defendant Central City Borough.

SHAULIS, *J.,* October 8, 1982—This is an action for personal injuries sustained by plaintiff minor child. We have before us defendants' preliminary objections in the nature of demurrers, motions to strike and motions for more specific pleadings.

## FACTS

Plaintiff William Bernard DeMarco, a minor, sues for injuries allegedly incurred due to the negligence of all defendants involved. Plaintiffs Frank and Doris DeMarco are husband and wife and the parents of said minor child.

On the date of the alleged accident, William was riding his bicycle when a truck, operated by George M. Napora, Jr., allegedly struck William while crossing an intersection in the Borough of Central City. Defendant George Michael Napora was the owner of said truck and the father of defendant

George M. Napora, Jr. Borough of Central City was named as a defendant for their alleged negligence in failing to adequately correct the purported dangerous conditions that existed where the accident occurred. More specifically, the borough is charged with failure to erect traffic-control devices, and failure to maintain an earthen bank, brush and vegetation located on the corner of the intersection.

## DISCUSSION

1. Defendants George M. Napora, Jr. and George Michael Napora.

Defendants' first preliminary objection is in the nature of a demurrer as to the third count of plaintiffs' complaint. Such an objection will be sustained only if the complaint indicates on its face that the law will permit no recovery, Buckley & Co., Inc. v. Com. Dept. of Trans., 34 Pa. Commw. 182, 382 A.2d 1298 (1978), and only if the case is clear and free from doubt. Jim Bulow Motors v. Beeman, 33 Somerset L.J. 165 (1976). With this, in mind, defendants' following specific averments will be analyzed:

1. plaintiffs are not entitled to collect medical expenses which are recoverable under the No-fault Motor Vehicle Insurance Act of Pennsylvania, 40 P.S. §1009.101 et seq.

2. plaintiffs are not entitled to recover as damages loss of wages of said minor child.

Smith v. Brown, 283 Pa. Super. 116, 423 A.2d 743 (1980), involved a mother who was attempting to recover against a motorist for expenses incurred in having her daughter's injuries treated and for loss sustained due to her being deprived of the daughter's services and income. The mother filed a

complaint in trespass in her daughter's name and in her own right. The court ruled therein that the mother's claims were barred by the no-fault statute. In addition, the court indicated that only an injured individual was entitled to recover under the no-fault statute's exception to the abolition of tort liability except where the individual is the survivor of the victim. 40 P.S. §1009.301(a). See also Cannon v. Hohmann, 10 D.&C.3d 765 (1979), where husband was barred from recovering his wife's medical expenses by §301 of the No-fault Act.

It is apparent that plaintiffs/parents are in the identical position as the mother in Smith. Consequently, they are not entitled to recover under the third count.

With one noted exception, plaintiff minor child is also not entitled to recover medical expenses in a tort action. This is due to the fact that section 202 of the No-fault Act permits the recovery of allowable expenses from the insurance carrier. Section 103 defines this to include, inter alia, professional medical treatment and care, emergency health services, and medical and vocational rehabilitation services.

For clarification purposes, the sections of the No-fault Act which have been and will be referred to within this discussion are §§103, 202, 205 and 301 omitted.

If the facts are such that plaintiff's economic losses exceed the basic-loss benefits of section 202 paid to plaintiff by his carrier, then the tortfeasor pursuant to §301(a)(4) does remain liable, but only to the extent that the losses are not covered. See Erie Ins. Exchange v. Fleagle, 285 Pa. Super. 310, 427 A.2d 651 (1981); Snavely v. Brooks, 12 D.&C.3d 222 (1979). Medical expenses are included in the phrase "allowable expense." Section 103. This cause of action does not exist, though, until the

victim is not compensated for basic-loss benefits due to limitations on such payments in accordance with section 202. See Bond v. Gallen, 292 Pa. Super. 207, 437 A.2d 7 (1981).

Other than this exception, the cases state generally that the No-fault Act precludes a tort action for the recovery of medical expenses. See Burke v. Elliot, 606 F.2d 375 (3rd Cir. 1979); Martin v. Soblotney, 296 Pa. Super. 145, 442 A.2d 700 (1982); Zagari v. Grakla, 264 Pa. Super. 239, 399 A.2d 775 (1979); Sturtz, et al. v. Ludy, et al., 38 Somerset L.J. 125, 15 D.&C.2d 289 (1979).

O'Sullivan v. Ruszecki, 2 D.&C.3d 276 (1977), proposes that if a plaintiff fits within any of the exceptions listed in section 301 permitting tort action, then that plaintiff is also entitled to recover medical damages from the tortfeasor. As O'Sullivan preceded the above-cited cases, its reasoning cannot now govern. Compare Theal v. Confer, 7 D.&C.3d 614 (1978), where the court expressly disagreed with the O'Sullivan ruling as to the recovery of medical expenses. Therefore, defendant tortfeasor may only be liable for medical expenses to minor child if the expenses exceed the §202 basic-loss benefits permitted to be recovered by plaintiff. In any event, defendants cannot be liable for more than the excess.

This same conclusion is reached for future medical expenses as well. Sturtz et al. v. Ludy et al., supra, dealt with this problem by citing the Pennsylvania No-fault Motor Vehicle Insurance Act (Pennsylvania Trial Lawyers Association, 1979) 1:7.1, pages 74-75:

"In accordance with sections 103 and 202 of the act, a victim, meaning an individual who suffers injury arising out of the maintenance or use of a motor vehicle, is entitled to payment or reimbursement

of all reasonable charges for or the reasonable value of medical care and treatment, medical and vocational rehabilitation services, and funeral expenses. Although there is a maximum limitation of $1,500 on funeral and burial expenses, all other reasonable and necessary medical expenses are unlimited in amount. A claimant is entitled, for the remainder of his life to all such expenses for treatment and care which are casually [causally] related to his injury."

The court in Sturtz went on to suggest that future medical expenses are treated in the same manner as medical expenses incurred. Thus, a tort action cannot generally stand to recover these expenses.

No authority has been found, and defendants' counsel did not cite any, that would prevent a minor child from recovering loss of wages. Section 301(a)(4) of the No-fault Act refers to §202(b) as an exception to tort-liability abolition. Section 202(b) provides for work-loss benefits. Although a plaintiff must first recover these losses from his insurance carrier, his recovery is limited by that section. See also sections 103 and 205 of the No-fault Act.

The exception listed in §301(a) (4) permits recovery in tort for the loss benefits not compensated by the no-fault carrier. In other words, if a plaintiff has suffered a loss in excess of that permitted as a recovery under §202(b), that plaintiff is permitted to sue for the difference. See Stockdill v. State Farm Mut. Auto. Ins. Co., 12 D.&C.3d 97 (1979); Walk v. Russell, 10 D.&C.3d 330 (1979); Berkebile v. Nationwide Ins. Co., et al., 34 Somerset L.J. 322, 6 D.&C.3d 243 (1977). Furthermore, a victim is entitled to recover for work-loss benefits even if the victim has never been gainfully employed. Marryshaw v. Nationwide Mut. Ins. Co., 13 D.&C.3d 172 (1979). See also Berkebile v. Nationwide Ins. Co. et al (No. 2), 40 Somerset L.J. 368 (1981). But a negli-

gence action cannot be maintained to recover losses less than $15,000 under the No-fault Act. Phelps v. Red Star Exp. Lines, 460 F. Supp. 158 (W.D., Pa. 1978).

It is highly unlikely that the minor child's loss would be greater than the limits set forth in §202(b); nevertheless, he would be entitled to work-loss benefits if he so qualified.

As it is apparent that plaintiffs/parents are not entitled to recover damages and plaintiff minor child may or may not be so entitled, the question now becomes whether a demurrer is the correct method of challenging their claims. It has been said that a demurrer is not proper to raise the wrong measure of damages. Goodrich-Amram 2d, §1017(b):11. See also Hudock et al. v. Donegal Mut. Ins. Co., 438 Pa. 272, 264 A.2d 668 (1970), citing Goodrich-Amram; Scranton A.&S. Co. v. Scranton Bd. of Trade, 271 Pa. 6, 113 Atl. 828 (1921).

Hudock, supra, at Pa. 277, n. 2, stated that "[A]n allegation of damages or a prayer for damages which are not legally recoverable in the cause of action pleaded is impertinent matter in the sense that it is irrelevant to that cause of action . . . A motion to strike off impertinent matter would appear to be the appropriate remedy." See Vartan Associates Inc. v. Mount Joy Borough Authority, 10 D.&C.3d 243 (1978), where damages not recoverable were struck from the complaint. See also Smith v. Brown, supra.

Thus, it appears proper to dispose of this by a motion to strike. Since defendants have raised these same issues in such a motion, the preliminary objections in the nature of a demurrer must be denied.

Defendants' next preliminary objection is for a motion to strike the following paragraphs for the alleged reason that these items are not recoverable under the No-fault Act:

13 — damages for present and future medical expenses

17 — damages for mental anguish and humiliation

28 — damages for present and future expenditures for medicine, medical attention and treatment.

29 — damages for loss of earnings of minor child.

Pa.R.C.P. 1017(b) (2) permits a motion to strike off a pleading because of lack of conformity to law or rule of court, or because of scandalous or impertinent matter. The merits of paragraphs 13, 28 and 29 have been previously discussed herein where we determined that these damages are not recoverable by plaintiffs/parents under the No-fault Act. Accordingly, a motion to strike is the proper means of discarding these averments; however, these paragraphs must remain, for the time being, as to plaintiff minor child as a recovery may be permitted should his §202 allowable-expense benefits and work-loss benefits be less than his actual losses.

A problem that does exist is that minor child did not plead that he has not been compensated for any expenses and work losses that he has incurred. Plaintiff's cause of action does not exist until he has not been indemnified for either of these expenses. See Bond v. Gallen, supra.

The general rule is that a motion to strike should be used sparingly and only in the event that the defect cannot be cured by amendment. 5 Standard Pa. Pract. §25:51. See also Meissner v. Hockenburg, Lycoming Co., no. 77-4783. Therefore, plaintiff should be given leave to amend so that he may plead that a cause of action does exist; i.e., his losses exceed his recovery. In the event that a cause of action does not presently exist, defendants' motion to

strike paragraphs 13, 28 and 29 must be sustained.

It must be noted that this accident allegedly occurred on March 30, 1980, and that plaintiff's complaint was filed on March 11, 1982. The two-year statute of limitations is applicable here as this case involved a personal injury. 42 Pa.C.S. §5524. Although this is merely conjecture by the court, plaintiffs instituted this action at such a time for the apparent purpose of tolling the limitations period.

"The two-year period of limitations in a case arising from a motor vehicle accident where the right to bring a tort action is limited by the No-fault Act does not start to run until the claimant knows or in exercise of reasonable diligence should have known that one of the thresholds specified in the No-fault Act has been reached." Bond v. Gallen, supra.

Consequently, plaintiffs may have instituted this action for medical expenses and loss of wages prematurely. On the other hand, failure to commence an action for noneconomic detriment under §301(a) (5) (in this case for physical pain, mental anguish and humiliation to be discussed immediately following this) may have resulted in that action being barred by the statute of limitations since the seriousness of the child's injury could have probably been determined at the date of the accident. Moreover, failure to include medical expenses and loss of earnings in that complaint may have prevented plaintiffs from litigating those causes of actions in the future due to the doctrine of res judicata. Therefore, if paragraphs 13, 28 and 29 are struck in the future, we will do so without prejudice to minor child, so that if a time comes when he is not compensated for his losses, he may institute an action to recover those expenses.

Paragraph 17 appears to fall under §301(a) (5) of the No-fault Act and is recoverable as damages for

noneconomic detriment. Section 103 defines non-economic detriment to mean "pain, suffering, inconvenience, physical impairment and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle." In Zagari v. Gralka, supra, plaintiff claimed damages for anxiety and embarrassment. The court indicated that this was encompassed within the claim for pain, suffering and inconvenience. Here, minor child's claim for physical pain, mental anguish or humiliation appears to fit into that same category.

Plaintiff must show that he fits into an exception listed in section 301 before he can commence a valid action under the No-fault Act. Plummer v. Dansky, 16 D.&C.3d 734 (1980). As can be seen by reviewing paragraphs 12, 13 and 15, plaintiff has adequately pleaded the requirements of §301 (a)(5) (A) and (B). Accordingly, since the allegations in paragraph 17 may result in the recovery of damages for noneconomic detriment by minor child, it must be allowed to remain in the complaint for this purpose, but not for the benefit of plaintiffs/parents.

Defendants' final preliminary objection is in the nature of a motion for a more specific complaint as to paragraph 16 where plaintiffs aver that they may incur financial expenses or losses in the future that will exceed the amounts that they are entitled to recover under the provisions of the No-fault Act.

O'Sullivan v. Ruszecki, supra, discussed the sufficiency of pleading in a similar situation:

"Where a plaintiff has alleged that injuries may result in expenses of $750 but they have not yet done so, and medical treatment is ongoing, so that the damages are unliquidated, he need not list all medical damages with specificity, but the lump sum is sufficient under Pa.R.C.P. 1044 (whether or not

damages are in excess of $10,000). Since medical treatment is ongoing and the damages in this case are unliquidated, Rule 1044 applies."

Such an analysis should apply with equal force here as it is impossible for plaintiff to determine the extent of his treatment in the future. Since plaintiff's complaint abided by the guidelines of Rule 1044, defendants' motion for a more specific complaint must be denied.

### 2. Defendant Borough of Central City

Defendant's first preliminary objection is in the nature of a demurrer alleging governmental immunity under the Political Subdivision Tort Claims Act of November 26, 1978 P.L. 1399, 53 P.S. §5311.101 (subsequently repealed by §333 of the Act of October 5, 1980, P.L. 693 and replaced by 42 Pa.C.S. §§8541-64 added by Act 142 of 1980). This act was in effect at the time of this accident.

This is an affirmative defense which should be properly raised under the heading of new matter according to Pa. Civil Rule 1030, Heifer v. Phila. State Hospital, 482 Pa. 386, 393 A.2d 1160 (1978); but since no objection was made as to it being brought as a preliminary objection and in in the interest of judicial economy, we may dispose of this issue at this time. Walter v. Commonwealth et al., 30 Pa. Commw. 248, 373 A.2d 771 (1977).

The relevant sections of the act are: [sections 201 and 202 omitted].

Plaintiffs responded to defendant's allegation by claiming that defendant was not immune from liability under the act, or in the alternative, defendant fell into exceptions (2) (3), (4) and (6) of §202. It is apparent that defendant is included under the act. Section 102 defines a political subdivision as includ-

ing "any county, city, borough, incorporated town, township. . . ." Thus, defendant's alleged negligent acts must fall within a §202 exception to §201 governmental immunity if plaintiffs are to prevail.

Three requirements are necessary to qualify as an exception to governmental immunity. Section 202(a) provides two of the requirements. These will not be discussed as the parties' only disagreement is as to whether any activity in §202(b) is applicable to these facts.

Reviewing the facts of this case indicates that plaintiffs are basing their cause of action on defendant's failure to erect traffic signs or signals at the intersection where the accident occurred and defendants' failure to modify the earthen bank or cut the brush and vegetation on the corner of the intersection. A cursory reading of §202(2) and (3) reveals that these alleged acts of negligence committed by defendant do not amount to an activity listed in those sections. Therefore, defendant's exception to immunity, if any, must be predicated upon §202(4) and/or (6).

Section 202(4) encompases a dangerous condition of trees under the care, custody or control of the political subdivision. Two problems must be overcome if it is to be determined that defendant falls within this section. First, does the word "trees" include the terms brush and vegetation? Second, if "trees" does include brush and vegetation, were they under the care, custody or control of defendant?

Webster's New International Dictionary (2nd ed., 1934) states the following:

"[B]rush — branches of trees lopped off; shrubs, bushes, small trees, or other vegetation of species that do not grow into forests, growing together either in a wood or in open areas,

"vegetation — plants in general

"tree — there is no exact line of damarcation [sic] between trees and shrubs, and many plants are capable of assuming either habit."

Thus, it appears that plaintiffs' designation of these items as brush and vegetation will not disqualify these objects from §202(b)(4) if they were under the care, custody or control of defendant.

Plaintiffs' complaint does not indicate whether the growth located at the intersection was in the control and/or possession of defendant or of an adjoining landowner. The Vehicle Code, 75 Pa.C.S. §6112(a), makes it clear that, "It is the duty of the owner of the real property to remove from the property any tree, plant, shrub or other similar obstruction, or part thereof, which by obstructing the view of any driver constitutes a traffic hazard." See also Keen v. Schlegelmilch, 14 D.&C.3d 107 (1979).

Although it is the duty of landowners to remove traffic hazards on their property, the local authorities are not necessarily relieved of the same. Marinelli v. Montour R. Co., 278 Pa. Super. 403, 420 A.2d 603 (1980), citing Lengle v. North Lebanon Township, 274 Pa. 51, 117 Atl. 403 (1922), stated that "Public authorities responsible for making public highways safe for travel have the duty to abate dangerous conditions existing on private lands abutting the highway." Therefore, the question of whether the brush and vegetation were under the control and possession of defendant or of an adjoining landowner would be of no consequence as a duty would exist in either case. In other words, defendants should control a dangerous condition regardless of whether or not it actually owns the property. A liberal construction of §202(b)(4) would render it applicable here and defendants may be

held liable if plaintiffs can prove the additional requirements of §202.

The exception in §202(b)(6) deals with a dangerous condition of streets owned by the political subdivision. As it has already been determined (immediately above) that a municipality does have a duty to abate a dangerous condition bordering a highway, it is apparent that §202(b)(6) would be applicable to such a situation (earthen bank, brush and vegetation) if it were dangerous and the other conditions of the section are satisfied.

Plaintiffs second allegation is that defendant failed to erect proper traffic-control devices. The Vehicle Code, 75 Pa.C.S. §101 et seq., deals with the power of local authorities to erect such devices.

"§6122. Authority to erect traffic-control devices

"(a) General rule.—The department on state-designated highways and local authorities on any highway within their boundaries may erect official traffic control devices, which shall be installed and maintained in conformance with the manual and regulations published by the department upon all highways as required to carry out the provisions of this title or to regulate, restrict, direct, warn, prohibit or guide traffic.

(1) Local authorities shall obtain approval of the department prior to erecting an official traffic-control device on a state-designated highway except where department regulations provide otherwise.

(2) Local authorities shall obtain approval of the department prior to erecting any traffic signal except in a municipality with a traffic engineer qualified in accordance with department regulations."

"6124. Erection of traff-control devices at intersections.

"The department on state-designated highways, including intersections with local highways, and lo-

cal authorities on intersections of highways under their jurisdiction may erect and maintain stop signs, yield signs or other official traffic-control devices to designate through highways or to designate intersections at which vehicular traffic on one or more of the roadways should yield or stop and yield before entering the intersection." June 17, 1976, P.L. 162, §1, eff. July 1, 1977.

Thus, the code apparently allows the local authorities to exercise their own discretion in deciding whether or not to erect such a device. This conclusion is bolstered by the enactment of §3321 of the code which establishes the right of way for vehicles that enter an intersection where no traffic controls are present. See Keen v. Schlegelmilch, supra.

"§3321. Vehicle approaching or entering intersection

"(a) General rule.—When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

(b) Exception.—The right-of-way rule declared in subsection (a) is modified at through highways and otherwise as stated in this part." June 17, 1976, P.L. 162, §1, eff. July 1, 1977.

The question now becomes whether §202(b)(6) of the Political Subdivision Tort Claims Act is applicable when a defendant fails to exercise its discretion to erect traffic-control devices. As this is a relatively new act, we have been unsuccessful in locating any cases that interpret the coverage of the activities listed in §202(b); however, a law review article has been written that attempts to deal with this problem. 84 Dick. L.R. 717, 743, n. 187 (1980), indicates the following as to whether immunity should be applied to a discretionary act:

187. An early draft of the act provided: "Nothing shall give rise to liability resulting from the failure . . . to initially place signs, signals or warning devices when such failure is a result of a discretionary act. . . ." P.S. 1477, printer's no. 1871, session of 1978, §203. This limitation does not appear in the "dangerous condition" subsections as finally enacted. P.S. 53, §5311.202(b)(4)-(7) (Purdon Supp. 1979-80). Standing alone, the language of §§202(b)(4)-(7) does not allow a discretionary exception to liability. While the limitation imposed by section 202(c) of the act on finding constructive notice is designed essentially to shield the government from liability in the discretionary allocation of resources, the application of section 202(c) is restricted to the issue of sufficient notice: '[T]he amount of time reasonably required to take protective measures including inspections required by law shall be determined with reference to the actual equipment, personnel and facilities available to the political subdivision and the competing demands therefor." P.S. 53, §5311.202(c) (Purdon Supp. 1979-80). See note 177 and accompanying text, supra.

Technically, the meaning of section 202(c) could be distorted to extend to the initiation of government policies or to the faulty design situation, but phrases such as "amount of time," "protective measures," and "actual equipment . . . available," indicate that the legislature intended otherwise. Section 202(c) clearly was intended to operate in an emergency situation: the barricade that is removed by vandals, the traffic light that ceases to function, the highway bridge that is washed out by a sudden storm. In sum, the act does not provide a general discretionary exemption for design, planning, or policymaking activities on the part of local governments.

Although this article does shed some light on this subject, Keen v. Schlegelmilch, supra, indicates that if defendant is not immune from suit, it cannot be held liable for failure to perform a clearly discretionary act. It should be noted that Keen was also a situation where a plaintiff who was involved in a motor vehicle accident was suing a municipality for failing to erect a traffic-control sign. The demurrer filed by defendant township was sustained as to that point.

To reiterate what has already been mentioned, a demurrer should only be sustained where the law will permit no recovery and the case is free and clear from doubt. Accordingly, defendants' demurrer must be sustained as to plaintiffs' averment that defendant is liable due to its failure to erect a traffic-control device. As plaintiffs' allegation that defendant had failed to correct a dangerous condition at the intersection (earthen bank, brush and vegetation) may fall within activities listed in §202(b)(4) and (6) of the Political Subdivision Tort Claims Act, defendants' preliminary objection in the nature of a demurrer must be denied as to these points.

Defendants' second preliminary objection is also in the nature of a demurrer. The allegation raised is that the facts of the complaint allege passive negligence which was not the proximate cause of the accident.

This issue was discussed in the very recent case of Harvey v. Hansen, 299 Pa. Super. 474, 445 A.2d 1228 (1982). Plaintiff, who was involved in a motor vehicle accident at an intersection, alleged that defendant "was negligent because he maintained his property in such a manner as to allow to exist thereon trees, brushes, shrubs, grasses and other plant growth which obstructed the lateral view of plaintiff as she attempted to cross the road." Defendant filed

a motion for summary judgment after the pleadings were closed. The lower court granted this motion, but it was subsequently reversed on appeal. Citing Estate of George M. Flickinger v. Ronald Ritsky and Marona Construction Co., 452 Pa. 69, 305 A.2d 40 (1973), the court stated that it agreed with the Flickinger decision in that there is no difference between active and passive negligence and that the issue of factual causation should be decided at trial. Following this approach would result in a denial of this preliminary objection so that the issue of causation may be properly dealt with at trial.

Defendant's third, fourth and fifth preliminary objections are identical to the first and second preliminary objections submitted by defendants George M. Napora, Jr. and George Michael Napora. For the reasons previously discussed herein defendant's demurrer as to paragraphs 28 and 29 must be denied. Defendant's motion to strike paragraphs 13, 17, 28 and 29 must be sustained only as to plaintiffs/parents. Minor child should be granted leave to amend so that he may properly plead a cause of action before a decision is reached pertaining to whether paragraphs 13, 28 and 29 must be struck. Paragraph 17 must be allowed to remain only for the benefit of the minor child.

Defendant's last preliminary objection is a motion for more specific pleadings under Pa.R.C.P. 1017(b)(3). The question under Rule 1017(b)(3) is whether the complaint is sufficiently clear to enable defendant to prepare his defense, or whether plaintiffs' complaint informs defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense. 2 Goodrich-Amram 2d §1017(b): 9, at 66. See also Centra Petroleum Co. v. Schmidt, 34 Somerset L.J.

202, 208 (1977); Pittman v. Trent, 30 Somerset L.J. 283, 284-286 (1975). The function of the pleadings is to state the facts in a manner which will communicate them and the issues clearly to the opponent and to the court. J. Reisman and Sons, Inc. v. Snyder's Potato Chips, a Division of Curtice-Burns, 31 Somerset L.J. 77 (1975). Lack of specificity in a complaint is grounds for preliminary objections requiring a more specific complaint. Lann v. Morgan, 70 D.&C.2d 717 (1974).

In a trespass complaint, the pleader should set forth the general factual situations, asserting what occurred, and then detail what defendant did or omitted doing which would constitute the negligence that caused plaintiff injuries. This is so because the complaint should show the basis for the conclusion of negligence and the cause of the plaintiff's harm. 2A Anderson Pa.Civ.Prac. §1019.23. See also 3 Standard Pa. Prac. (Rev. ed.) §193; Pike Cty. Hotels Corp. v. Kiefer, 262 Pa. Super. 126, 396 A.2d 677 (1978). Plaintiffs must aver material facts upon which to assert a duty running between them and defendants. Id.

Application of the above-cited principles to the facts at bar lead us the conclusion that plaintiffs should file a more specific pleading as to the second count of their complaint. As defendant has claimed, plaintiffs have failed to aver how defendant was charged with notice of the alleged dangerous condition. Such notice is a prerequisite to a duty being owed to the public. If no duty was owed, then no negligence could have been committed in failing to correct the alleged dangerous condition. Therefore, to establish a duty owed to them, plaintiffs must indicate what type of notice defendant had received to activate its duty to alleviate a potentially dangerous condition.

Plaintiffs need not file a more specific pleading as to who had custody, control, possession or care of the earthen bank, brush and vegetation at the intersection. As was discussed earlier, defendant has a duty to safeguard against dangerous conditions regardless of whether or not it actually owns the property. Furthermore, a more specific pleading should not be required where the party filing the objections has, or should have, as much or better knowledge than the pleader. Hock v. L.B. Smith, Inc., 69 D.&C. 2d 420 (1974). It should be quite obvious to defendant whether or not it had custody, control or possession of this property.

Finally, defendants' demand for a more specific pleading as to paragraphs 13, 16 and 28 should also be denied. As defendant alleges, Chapter 4 of the Political Subdivision Tort Claims Act does place limitations on the amount of damages recoverable from defendant. Be that as it may, it is not only impracticable, but also impossible for plaintiffs to determine and list future expenses that may be incurred. Accordingly, plaintiffs need not plead all medical damages with specificity. See O'Sullivan v. Ruszecki, supra; Pa.R.C.P. 1044.

## ORDER

Now, this October 8, 1982, regarding

### DeMarco v. Napora

1. Defendants' first preliminary objection in the nature of a demurrer as to the third count is denied.

2. Defendants' second preliminary objection in the nature of a motion to strike paragraphs 13 and 17 of the first count and paragraphs 28 and 29 of the third count is sustained with respect to plaintiffs (parents) but is denied with respect to minor plaintiff; and, minor plaintiff is allowed 20 days to amend

paragraphs 13, 28 and 29 in accordance with this opinion if he can.

3. Defendants' third preliminary objection is denied.

## DeMarco v. Borough of Central City

1. Defendants' first preliminary objection in the nature of a demurrer alleging governmental immunity is sustained as to that portion of the complaint that deals with defendants' failure to erect traffic controls (paragraphs 23 and 26(d) of the second count).

2. Defendants' second preliminary objection is denied.

3. Defendants' third preliminary objection is denied.

4. Defendants' fourth and fifth preliminary objections in the nature of a motion to strike paragraphs 13 and 17 of the first count and paragraphs 28 and 29 of the third count are sustained as to plaintiffs/parents but are denied with respect to minor plaintiff and minor plaintiff is allowed 20 days to amend paragraphs 13, 28 and 29 in accordance with this opinion if he can.

5. Defendants' sixth preliminary objection is sustained with respect to the second count but limited to the type of notice that defendants received of a dangerous condition at the intersection (paragraph 24 and 25) and plaintiffs are allowed 20 days to file a more specific complaint with respect thereto.