## McKENDRICK v PETRUCCI

1. PARTIES—STANDING—AUTOMOBILES—INSURANCE—NO FAULT—STATUTES.

   An automobile accident victim has standing to challenge provisions of the no-fault act which grant immunity from tort liability to insured persons.

2. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES—CLASSIFICATIONS—SUSPECT CLASSIFICATIONS—FUNDAMENTAL RIGHTS.

   When a party challenging legislation on equal protection grounds cannot point to a fundamental right restricted or a suspect classification made, the challenged legislation should generally be upheld unless the classification is shown to be lacking any rational justification.

3. CONSTITUTIONAL LAW—STATUTES—CLASSIFICATIONS—SUBSTANTIALRELATION-TO-THE-OBJECT TEST.

   A fair-and-substantial-relation-to-the-object-of-the-legislation test should be applied to determine whether a statutory classification is unconstitutional where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental.

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES—TRADITIONAL RESTRAINT—DISCRIMINATION—INDIVIDUAL INTERESTS—DISADVANTAGED CLASS.

   Legislation challenged on equal protection grounds is scrutinized with traditional deference and restraint where the case does not present an instance of discrimination against important individual interests with constitutional implications against particularly disadvantaged or powerless classes.

5. AUTOMOBILES—INSURANCE—NO FAULT—TORT IMMUNITY—CONSTITUTIONAL LAW—EQUAL PROTECTION.

   A person injured in an automobile accident, caused by an insured

REFERENCES FOR POINTS IN HEADNOTES

[1, 5–8] Am Jur 2d, New Topic Service, (No Fault Insurance) § 14.
[2–4] 16 Am Jur 2d, Constitutional Law § 544.

driver, is not denied equal protection of the law by a provision of the no-fault act because there is a clear relationship between the classifications based on insurance coverage and the purpose of the act to require insurance coverage on all automobiles.

6. AUTOMOBILES—INSURANCE—NO FAULT—TORT LIABILITY—PAIN AND SUFFERING—DEATH—SERIOUS IMPAIRMENT—DISFIGUREMENT.

The no-fault act did not abolish tort liability for noneconomic loss arising out of the ownership, maintenance or use of a motor vehicle where there has been (1) death, (2) serious impairment of body function, or (3) permanent serious disfigurement (MCLA 500.3135; MSA 24.13135).

7. AUTOMOBILES—TORTS—INSURANCE—NO FAULT—JURY QUESTION—SERIOUS IMPAIRMENT OF BODY FUNCTION.

The question whether a plaintiff has suffered a "serious impairment of body function" in a tort action arising out of an automobile accident should in most instances be submitted to the jury as triers of fact; only when interpretation approaches or breaches permissible limits does it become a question of law for the court.

8. AUTOMOBILES—TORTS—INSURANCE—NO FAULT—SUMMARY JUDGMENT—JURY—SERIOUS IMPAIRMENT OF BODY FUNCTION—STATUTES.

Summary judgment for a defendant in an action arising out of an automobile accident, based upon the plaintiff's failure to show a serious impairment of body function under the no-fault act, was error where the plaintiff had developed tendonitis in his right arm from the accident, he suffered persistent pain in his shoulder, and surgical treatment for him was not possible, and where it cannot be said that no reasonable jury could view plaintiff's impairment as serious (MCLA 500.3135; MSA 24.13135).

Appeal from Macomb, George R. Deneweth, J. Submitted May 11, 1976, at Detroit. (Docket No. 25639.) Decided September 8, 1976.

Complaint by William E. McKendrick against Peter Petrucci, Jr., and Louis F. Petrucci for damages arising out of an automobile accident. Summary judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Lopatin, Miller, Bindes & Freedman* (by *Michael A. Gantz),* for plaintiff.

*Dice, Sweeney & Sullivan, P. C.* (by *Jon Feikens),* for defendants.

Before: R. M. MAHER, P. J., and BRONSON and D. C. RILEY, JJ.

R. M. MAHER, P. J. This appeal, from an order granting summary judgment for defendants, presents two issues. The first issue is constitutional, the second procedural.

Plaintiff, driving a friend's automobile, was rear-ended by defendant Peter Petrucci, who was driving an automobile owned by defendant Louis F. Petrucci, on October 9, 1973. Both vehicles had coverage under the insurance required by 1972 PA 294; MCLA 500.3101, *et seq.;* MSA 24.13101, *et seq.* (No Fault). Plaintiff brought this action, alleging injuries caused by defendant Peter Petrucci's negligence. Defendants answered by invoking the provisions of the no fault act that abolished much of the tort liability for injuries caused in automobile accidents. MCLA 500.3135; MSA 24.13135. That section provides substantial immunity from traditional tort liability for a no fault insured:

"(1) A person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement.

"(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 was in effect is abolished except as to:

"(a) Intentionally caused harm to persons or property.

Even though a person knows that harm to persons or property is substantially certain to be caused by his act or omission, he does not cause or suffer such harm intentionally if he acts or refrains from acting for the purpose of averting injury to any person, including himself, or for the purpose of averting damage to tangible property.

"(b) Damages for noneconomic loss as provided and limited in subsection (1).

"(c) Damages for allowable expenses, work loss and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly and 3 year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his liability by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured."

Plaintiff, pointing out that the section sets up two classes, one immune from most tort liability and the other not, claims that he, as a victim of injuries caused by a member of the class granted immunity, is subjected to an invidious discrimination. It is a violation of equal protection guarantees, plaintiff asserts, for an injured party's rights to be dependent upon whether or not the injury was caused by someone who had insurance coverage.

We quickly reject defendants' answer that plaintiff has no standing to challenge the statutory scheme. Plaintiff, as an automobile accident victim, might find his ability to maintain an action qualified by the immunity granted by the statute.

Plaintiff's argument is premised upon a reading of the statute that grants no immunity to an uninsured party to an accident. In so reading the statute, plaintiff is not alone. See *Gaines v Mohawk Motor, Inc* (Wayne Circuit Court, Civil No. 74-005-575 NI, decided August 1, 1974); *1975 An-*

*nual Survey of Michigan Law, Insurance Law,* 22
Wayne L Rev 535, 539 (1976) ("The unfettered
right of an individual injured in an automobile
accident to sue in tort under preexisting common
law rules is preserved in full if the other party to
the accident is uninsured".) The statute, however,
is susceptible to another construction. Paragraph
(1) of MCLA 500.3135; MSA 24.13135 states, with-
out qualification, that tort liability for noneco-
nomic loss, *i.e.,* pain and suffering, remains only if
the threshold of either death, serious impairment
of body function or permanent serious disfigure-
ment is met. The paragraph makes no mention of
insurance in creating this threshold for liability
for noneconomic loss. The second paragraph of
MCLA 500.3135; MSA 24.13135 abolishes most tort
liability when no fault insurance is in effect and
details the limited tort liability which remains.
Included among the instances of retained liability
is liability for noneconomic loss set forth in para-
graph (1). A reasonable construction of the entire
section is that in every instance liability for none-
conomic loss is limited by the threshold stated in
paragraph (1), and and that paragraph (2) only
concerns the limitation of liability applicable when
there is no fault coverage. The present case, how-
ever, does not require that this construction be
accepted or rejected, since plaintiff's equal protec-
tion challenge fails even when premised upon the
construction he offers.

When the party challenging legislation on equal
protection grounds cannot point to a fundamental
right restricted or a suspect classification made by
the challenged legislation, judicial deference to
legislative prerogative requires that the challenged
classification be upheld unless it is shown to be
lacking any rational justification. *Dandridge v Wil-*

*liams,* 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970), *Kahn v Shevin,* 416 US 351; 94 S Ct 1734; 40 L Ed 2d 189 (1974).

The stricter test of "fair and substantial relation to the object of the legislation", *Reed v Reed,* 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971), has been recently applied by our Supreme Court. See, *e.g., Alexander v Detroit,* 392 Mich 30; 219 NW2d 41 (1974), *Reich v State Highway Department,* 386 Mich 617; 194 NW2d 700 (1972). Plaintiff relies upon these and other cases that have applied a test stricter than the traditional one for equal protection, *e.g., Gallegos v Glaser Crandell Co,* 388 Mich 654; 202 NW2d 786 (1972), *Fox v Employment Security Commission,* 379 Mich 579; 153 NW2d 644 (1967). The recent Supreme Court decision declaring unconstitutional the guest passenger statute, MCLA 257.401; MSA 9.2101, *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975), suggests when the application of the fair-and-substantial-relation-to-the-object-of-the-legislation test is appropriate.

"In my judgment, at least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied.

"Judicial deference to the Legislature is premised in part upon the perceived need for experimentation, especially in social and economic matters." 394 Mich at 671–672.

This language from Justice Levin's opinion in *Manistee Bank* indicates that this Court, in examining the classifications made in the no fault act, need not imitate the aggressive review of legislation found in *Reich* and the other cases cited by

plaintiff. Similarly, since this case does not present an instance of "discrimination against important individual interests with constitutional implications and against particularly disadvantaged or powerless classes", *San Antonio Independent School Dist v Rodriguez,* 411 US 1, 109; 93 S Ct 1278; 36 L Ed 2d 16 (1973) (dissenting opinion of Marshall, J.), decisions of the United States Supreme Court that have scrutinized legislation "with less than traditional deference and restraint", see, *e.g., Reed v Reed, supra,* need not serve as models for the inquiry presently before this Court.

Plaintiff, to succeed in his equal protection challenge to the classification made in MCLA 500.3135; MSA 24.13135, construed as he proposes, must convince this Court that reasons to support the classification cannot be produced. In this attempt he fails.

The no fault act, 1972 PA 294, evidences a clear purpose. All victims of automobile accidents in the state are to receive prompt compensation for their economic losses through insurance coverage.[1] To achieve this purpose, the act requires that all automobiles registered in the state and all automobiles not registered in the state but operated in the state for more than 30 days in a calendar year, have no fault coverage in effect. The owner or registrant of an automobile who does not secure the required coverage is guilty of a misdemeanor, punishable by up to one year imprisonment and up to a $500 fine. MCLA 500.3102(2); MSA

---

[1] MCLA 500.3113; MSA 24.13113 does name three groups not entitled to personal protection benefits: a person taking a motor vehicle unlawfully, an owner or registrant who has not complied with the statute's requirement of securing insurance for his vehicle (when his vehicle is involved in the accident), and certain out-of-state motorists. The legitimacy of these exceptions is not an issue in this case.

24.13102(2). The owner or registrant of an uninsured automobile is also liable to the no fault insurer who pays benefits to a person occupying an uninsured automobile. MCLA 500.3177; MSA 24.13177. In providing that the uninsured tortfeasor does not have the same immunity that exists when there is insurance coverage, the act creates another significant incentive towards the goal of insurance coverage for all automobiles. In view of the clear relationship between the classification and the purpose of the act, it would be improper to invalidate the classification merely because it may incidentally bestow an advantage upon some accident victims.

We should not expect the act, which was a major overhaul of the method of automobile accident reparations, to emerge without some rough edges. Nor should this Court attempt to determine if the course chosen by the Legislature was the best one available. Our only concern is to examine the act for constitutional infirmities. The discrimination plaintiff complains of is not one.

Defendants, since their liability, if any, arose "from the ownership, maintenance or use within this state of a motor vehicle with respect to which the security required by subsections (3) and (4) of section 3101 [MCLA 500.3101; MSA 24.13101] was in effect", have their tort liability limited by MCLA 500.3135(2); MSA 24.13135(2). Although plaintiff's complaint alleges medical expenses, lost wages, property damage and pain and suffering, his action depends upon whether or not he comes under MCLA 500.3135(2)(b); MSA 24.13135(2)(b).[2]

---

[2] Plaintiff has no claim against defendants for medical expenses. No fault coverage provides for all reasonable medical expenses, MCLA 500.3107(a); MSA 24.13107(a). MCLA 500.3135(2); MSA 24.13135(2) does not list medical expenses among the remaining areas of liability. MCLA 500.3135(2)(c); MSA 24.13135(2)(c) permits: recovery in tort for

Under that provision, defendants do not escape tort liability for noneconomic loss, *i.e.,* pain and suffering, if plaintiff has suffered "serious impairment of body function".

Plaintiff alleged impairment of his right arm caused by tendonitis. Defendants did not dispute this injury but, moving for summary judgment, offered the depositions of plaintiff and his examining physician, plus two medical reports, to show that plaintiff had not suffered a serious impairment of body function. Affidavits showing no fault insurance coverage in effect for all the parties at the time of the accident have also been submitted.

The nature and extent of plaintiff's injury was not at issue below. After the accident plaintiff saw the internist who had been treating him for a heart condition. This internist referred plaintiff to an orthopedic surgeon, whom defendants later deposed.

The orthopedic surgeon diagnosed plaintiff's injury as tendonitis of the biceps tendon of his right arm. Movement of the arm was possible, but plaintiff experienced persistent pain in the shoulder. X-rays were normal. Surgical treatment of plaintiff's condition was ruled out because of his heart condition and the treatment he was receiving for it.

The trial court determined that plaintiff did not suffer serious impairment of body function as a result of the accident. Plaintiff contends that whether plaintiff has suffered a serious impairment of body function is a question of fact, and

economic loss in excess of the no fault benefits for allowable expenses, work loss and survivor's loss, *see* MCLA 500.3107 to 500.3110; MSA 24.13107 to 24.13110; but plaintiff's complaint does not allege these damages. While plaintiff may have a cause of action for the property damage alleged, *see Shavers v Attorney General,* 65 Mich App 355; 237 NW2d 325 (1975), standing alone this portion of his complaint would not be within the circuit court's jurisdiction. MCLA 600.8301; MSA 27A.8301.

that under the strict standard of *Rizzo v Kretsch-mer,* 389 Mich 363; 207 NW2d 316 (1973), it was improper to prevent, by means of summary judgment, submission of the question to the jury.

In *Rizzo,* the Supreme Court reversed an order of summary judgment granted defendants in a dramshop action. In opposition to the motion for summary judgment on the basis of no genuine issue as to whether the driver who struck plaintiffs' decedent was intoxicated, plaintiffs offered proof of the amount of intoxicants the driver consumed, promised to produce competent medical testimony that the driver was under the influence of intoxicants after consuming that amount, and pointed to deposition testimony that the driver was intoxicated one-half hour after he left the last of several bars. "Therefore, plaintiffs' several proofs at this stage of the proceedings did raise a 'genuine issue' of fact as to whether or not Contardi was intoxicated when served. Plaintiffs have presented admissible evidence from which this question could be resolved in their favor." 389 Mich at 379.

The statutory cause of action asserted in *Rizzo* depended upon a sale of intoxicants to one already intoxicated. The cause of action plaintiff herein asserts requires, among other things, serious impairment of body function. The determination that a person was intoxicated at a particular time and the determination that a person has suffered serious impairment of body function, while both can be labeled as factual determinations, are clearly distinguishable. The former, properly called a factual determination, does not require the assignment of values or application of a rule of law. In this sense, determining whether or not a person was intoxicated at a particular time is similar to

determining whether or not a person has suffered any impairment to a particular body function. To determine that there has been a *serious* impairment of body function, however, requires not only that an impairment be found but also that it be assigned a value.

The Legislature, in its alteration of automobile accident reparations, decided that liability for pain and suffering would only remain if an impairment of body function could be classified as "serious".[3] The term is nebulous, but the Supreme Court has declared that it is "sufficient for legal interpretation". *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 481; 208 NW2d 469 (1973).

The same opinion indicates that the question of serious impairment should in most instances be submitted to the jury as triers of fact. "Only when interpretation approaches or breaches permissible limits does it become a question of law for the Court." 389 Mich at 478. The question of serious impairment is analogized to other questions of law applied to facts or values applied to facts which are submitted to the triers of fact to decide, *e.g.,* proximate cause.

"Clarity of thought is not advanced by debating whether law application is law-making or fact-finding, as commentators have done. Moreover, it is meaningless to assign the task in a specific case to judge or jury simply by use of the law and fact jargon, as courts have done. A far preferable solution would be to recognize a third category, and to deal with it as such, not on the basis of terminology, but on the basis of policy. Among the policy factors to be considered should be the impact

---

[3] Liability for noneconomic loss also remains when there has been either death or "permanent serious disfigurement". MCLA 500.3135; MSA 24.13135.

of federal and state constitutional provisions preserving the right of trial by jury in the civil suit. Other factors would be the relative competence of judge and jury with respect to a specific example of law application, and the sacrifice in uniformity and predictability which would result in a particular case from entrusting law application to jury rather than judge." Weiner, *The Civil Jury Trial and the Law-Fact Distinction,* 54 Cal L Rev 1867, 1876.

Procedure, of course, should serve the substantive goals that law seeks to achieve. One of the obvious goals of a scheme of no fault automobile reparations is to keep minor personal injury cases out of court.[4] This is not necessarily an end in itself, since it also furthers the objective of returning more of the automobile insurance premium dollars to accident victims. But when the decision that an injury falls within the class of injuries that, under no fault, should be excluded from judicial remedy is only made when the litigation process has been completed, much of the desired efficiency is lost.

"[I]f the procedural system cannot find a way to keep cases that belong in no-fault out of the courthouse, the system is not going to work." Schwartz, *No Fault Insurance: Litigation of Threshold Questions under the New York Statute—The Neglected Procedural Dimension,* 41 Brooklyn L Rev 37, 53.

---

[4] Chief Justice THOMAS GILES KAVANAGH, in his State of the Judiciary message, presented to a joint session of the House and Senate on March 2, 1976, spoke at length on ever expanding burden placed upon our courts. "It is necessary to reassess and rethink our whole approach. Unless the court system is to cease to function as it was intended, some limitation on the input to that system must be effected." The Legislature, by adopting a no fault scheme of automobile accident reparations, anticipated the Chief Justice's admonition that "we must explore avenues of solving problems other than the ones we currently use. We must develop different procedures to fit the tort or the particular problem." *See* 55 State Bar Journal 235, April, 1976.

Had the Supreme Court not previously addressed the issue, even in what is perhaps dicta, we would be inclined to say that the decision whether a particular impairment constitutes a serious impairment of body function is for the court to make. The court appears to be in a better position than the jury to discern legislative intent and to evaluate the gravity of an injury in relation to that intent. This would allow for preliminary termination of actions, such as the present one, where the cause and extent of an impairment are not disputed.

However, we feel constrained to defer to the Supreme Court's discussion of the issue and to assign to the trier of fact the question whether a serious impairment of body function exists. Where resolution of a case requires the trier of fact to make "qualitative inferences", summary judgment will usually not be appropriate. 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), 1975 Supp, pp 94–95. Since it cannot be said with certainty that no reasonable jury could view plaintiff's impairment as serious, summary judgment was improper.

Reversed and remanded.