VITALE v DANYLAK

1. AUTOMOBILES—INSURANCE—NO FAULT—CONSTITUTIONAL LAW—
   EQUAL PROTECTION—STATUTES.
   Michigan's no-fault insurance law does not violate equal protection of the law (MCLA 500.3101 *et seq.;* MSA 24.13101 *et seq.).*

2. AUTOMOBILES—TORTS—INSURANCE—NO FAULT—SUMMARY JUDGMENT—SERIOUS IMPAIRMENT OF BODY FUNCTIONS—STATUTES.
   Summary judgment for the defendant in an action arising out of an automobile accident, based upon the plaintiff's failure to show a serious impairment of body function under the no fault act, was proper where the plaintiff's sole injury was a stiff neck which was treated with minimal medication and disappeared within a week (MCLA 500.3135; MSA 24.13135).

Appeal from Macomb, George R. Deneweth, J. Submitted January 4, 1977, at Lansing. (Docket No. 28667.) Decided March 31, 1977. Leave to appeal applied for.

Complaint by Stella Vitale and Maria Vitale against Jerry G. Danylak for damages for injuries received in an automobile accident. Summary judgment for defendant on the claim by Stella Vitale. Stella Vitale appeals. Affirmed.

*Lopatin, Miller, Bindes & Freedman* (by *Michael Gagleard),* for Stella Vitale.

*Halsey, Halsey & Pommerening,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 7 Am Jur 2d, Automobile Insurance § 7.5; and see Am Jur 2d, New Topic Service, No-fault Insurance.
Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

Before: DANHOF, C. J., and BASHARA and R. M. MAHER, JJ.

BASHARA, J. Plaintiff Stella Vitale appeals from a grant of summary judgment in favor of the defendant, Jerry Danylak.

The plaintiff and her daughter, Maria Vitale, were injured in a collision between their car and the defendant's. The accident occurred on January 29, 1975. The next day, on the advice of her attorney, Stella Vitale went to see a doctor. She complained of a stiff neck resulting from the accident. The doctor prescribed some medicine, presumably pain killers and/or muscle relaxants. Mrs. Vitale testified in a deposition that the stiff neck continued for around one week. She saw the doctor one or two more times.

On March 31, 1975, plaintiffs Stella and Maria Vitale filed a complaint against the defendant. The complaint alleged negligence on the part of the defendant resulting in serious impairment of the plaintiffs' body functions. On February 11, 1976, the defendant moved for summary judgment under GCR 1963, 117.2(1), claiming that neither plaintiff had demonstrated a serious impairment of body function or permanent serious disfigurement. The trial court, in an order dated April 14, 1976, granted summary judgment as to Stella Vitale.

The plaintiff's contention that Michigan's no fault insurance law, MCLA 500.3101 *et seq.;* MSA 24.13101 *et seq.,* violates equal protection has been resolved to our satisfaction by the decision of this Court in *McKendrick v Petrucci,* 71 Mich App 200; 247 NW2d 349 (1976). We agree with the *McKendrick* Court that the no-fault law does not violate equal protection.

Plaintiff's second issue raises an important ques-

tion for Michigan civil practice. Plaintiff contends that an allegation of serious impairment of body function is always a question of fact to be decided in a full trial. If the plaintiff is correct, the trial judge erred in granting summary judgment on the grounds that the plaintiff's claim did not constitute a serious impairment. On more general grounds, acceptance of the plaintiff's position will foreclose the application of summary judgment in all cases where a plaintiff has alleged serious impairment of body function or permanent serious disfigurement as a prerequisite for maintaining a negligence action for non-economic losses arising from an automobile accident.[1]

Our decision on this issue hinges on the pivotal term "serious". The plaintiff argues that only a jury or judge sitting as a trier of fact can decide if an alleged injury is "serious" because the term inherently requires that a qualitative choice be made. Such an analysis, which of necessity will involve some degree of personal opinion, is contended to be beyond the scope of inquiry on a motion for summary judgment. The defendant responds that if the term "serious" is capable of definition by a jury it is also possible for the trial judge to decide, after accepting as true all of the plaintiff's factual allegations, that no reasonable jury would find the injury sustained to be serious. We agree with the defendant that summary judgment was appropriate in the present case.

We are not unmindful of the decision reached in *McKendrick v Petrucci, supra.* The *McKendrick* Court held:

"Had the Supreme Court not previously addressed

---

[1] MCLA 500.3135; MSA 24.13135. Liability for noneconomic losses also remains where a death has resulted.

the issue, even in what is perhaps dicta, we would be inclined to say that the decision whether a particular impairment constitutes a serious impairment of body function is for the court to make. The court appears to be in a better position than the jury to discern legislative intent and to evaluate the gravity of an injury in relation to that intent. This would allow for preliminary termination of actions, such as the present one, where the cause and extent of an impairment are not disputed.

"However, we feel constrained to defer to the Supreme Court's discussion of the issue and to assign to the trier of fact the question whether a serious impairment of body function exists. Where resolution of a case requires the trier of fact to make 'qualitative inferences', summary judgment will usually not be appropriate. * * * Since it cannot be said with certainty that no reasonable jury could view plaintiff's impairment as serious, summary judgment was improper." (Citation omitted.) 71 Mich App at 212.

The *McKendrick* Court's reliance on language of the Michigan Supreme Court refers to the decision in *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973). The Supreme Court was faced with the question of whether the phrases "serious impairment of body function" and "permanent serious disfigurement" were sufficient for legal interpretation. The Court held:

"[T]hat such phrases are capable of legal interpretation and, indeed, that juries or judges sitting without juries frequently have and do interpret comparable phrases bearing upon various facets of the law. Such findings result from denominated fact questions and thus are within the exclusive province of the triers of fact. *Only when interpretation approaches or breaches permissible limits does it become a question of law for the Court. Such questions must be approached on a case by case basis.*"(Emphasis added.) 389 Mich at 477–478.

We do not read the language of the Supreme Court as a complete prohibition of the use of summary judgment whenever a "serious impairment" or "permanent serious disfigurement" is alleged in the pleadings. While we recognize that generally the trier of fact must make the qualitative decision of whether a particular injury is serious or permanent, it does not follow that the trial judge is in all cases precluded from consideration of those questions.

The Supreme Court held that where the legal interpretation of the terms in question "approaches or breaches permissible limits" the interpretation becomes a question of law for the trial court. While the opinion did not specify where the "permissible limits" are drawn, this Court is of the opinion that if any class of cases could approach such limitation, the case at bar must be included in that class. The plaintiff's sole injury arising from the accident was a stiff neck, which was treated with minimal medication and subsequently disappeared within a week. While not intending to denigrate the plaintiff's suffering, this Court is left with the conclusion that her injury was, at best, minor. We do not feel that the trial judge erred in finding that her injury did not meet the standard of "serious impairment of a body function".[2]

The statute's elimination of tort liability for noneconomic damages, except where the enumerated conditions result, is inherently directed toward a reduction in the number of litigated suits. The *McKendrick* Court succinctly outlined this policy objective:

[2] The *McKendrick* Court held that summary judgment was improper where the plaintiff had alleged suffering persistent pain in her shoulder and tendonitis arising out of an accident. The Court found it was not certain that a reasonable jury could not find this injury to be serious. Even under this Court's analysis the facts alleged in *McKendrick* would have precluded summary judgment.

"Procedure, of course, should serve the substantive goals that law seeks to achieve. One of the obvious goals of a scheme of no fault automobile reparations is to keep minor personal injury cases out of court. This is not necessarily an end in itself, since it also furthers the objective of returning more of the automobile insurance premium dollars to accident victims. But when the decision that an injury falls within the class of injuries that, under no fault, should be excluded from judicial remedy is only made when the litigation process has been completed, much of the desired efficiency is lost.

" '[I]f the procedural system cannot find a way to keep cases that belong in no-fault out of the courthouse, the system is not going to work.' Schwartz, *No Fault Insurance: Litigation of Threshold Questions under the New York Statute—the Neglected Procedural Dimension,* 41 Brooklyn L Rev 37, 53." 71 Mich App at 211.

If summary judgment is held to be unavailable in any case where the plaintiff alleges an injury in one of the required categories, this desired efficiency will be at best wishful thinking. The result of requiring trial where the injury alleged is of a clearly superficial nature would perpetrate a system of needless litigation. We do not believe the Legislature intended to foreclose a trial judge's ability to decide such cases at the earliest possible date.

In holding that summary judgment is available where the alleged injuries fall below certain definitional limits we do not mean to impose any strict rules for formulation of those limitations. Terms such as "serious" do not easily lend themselves to a delineated set of guidelines. As stated by the Supreme Court, each case must be handled individually. We are confident that the trial bench can, as in all cases of summary judgment, exercise this procedure with care and concern for justice.

Affirmed. Costs to defendant.