GAGLIARDI v FLACK

Docket No. 110246. Submitted May 4, 1989, at Marquette. Decided September 5, 1989. Leave to appeal denied, 433 Mich —.

On August 14, 1982, Anthony Gagliardi injured his wrist in an automobile accident. On the following day he sought medical attention. On August 30, 1982, x-rays of the wrist revealed arthritic changes aggravated by the trauma of the automobile accident. Gagliardi was totally disabled because of the wrist injury for a six-week period following the accident and the wrist never improved after the accident. On May 7, 1985, a wrist prosthesis was implanted. On October 24, 1985, Anthony Gagliardi and his wife, Joanne Gagliardi, brought a negligence action in Marquette Circuit Court against Michael Flack, driver of the other vehicle involved in the automobile accident, alleging serious impairment of a body function within the meaning of the automobile no-fault insurance act. Defendant moved for summary disposition on the basis of the running of the three-year statutory period of limitation. The circuit court, Edward A. Quinnell, J., denied the motion for summary disposition without prejudice to renew the motion after additional discovery and ordered the matter remanded to the 96th District Court. Following discovery, defendant renewed the motion for summary disposition on the basis of the running of the statutory period. The district court, Patricia L. Micklow, J., denied the motion, holding that the running of the statutory period was tolled until such time as plaintiffs discovered or should have discovered that the injury exceeded the no-fault tort threshold, a question to be decided by the jury. Defendant appealed to the Marquette Circuit Court, Raymond J. Jason, J., which affirmed the district court. Defendant appealed to the Court of Appeals by leave granted.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 *et seq.*; Limitation of Actions §§ 103, 146.

When statute of limitations commences to run on automobile no-fault insurance personal injury claim. 36 ALR4th 357.

To permit indefinite tolling of the statutory period of limitation until the plaintiff knows or should have known of the likelihood of prevailing before a jury on the issue whether one has met the statutory threshold to bring a negligence claim under the automobile no-fault insurance act would create a standard by which one is to determine whether an action is timely that is too indefinite and uncertain to be administered. To allow such tolling of the running of the limitation period with respect to no-fault liability claims would thwart the purpose of the no-fault act.

Reversed and remanded.

MURPHY, J., dissented. He would hold that, to avoid unjust results, an action for noneconomic losses under the no-fault act should not accrue until the plaintiff discovers or should have discovered the serious impairment of a body function. He would affirm.

INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION
— LIMITATION OF ACTIONS.

The three-year statutory period of limitation for negligence actions is not tolled until the plaintiff in an action for noneconomic losses from an alleged serious impairment of a body function as a result of an automobile accident knows or should have known of the likelihood of prevailing before a jury on the threshold question of whether the alleged injury constituted serious impairment of a body function, since such a standard would be too indefinite and uncertain to be administered (MCL 500.3135, 600.5805[8]; MSA 24.13135, 27A.5805[8]).

*Shafer, Koch & Juidici, P.C.* (by *Robert P. Juidici*), for plaintiff.

*Wietek & Summers* (by *Joseph R. Wietek*), for defendant.

Before: MURPHY, P.J., and MACKENZIE and GRIFFIN, JJ.

GRIFFIN, J. Defendant appeals by leave granted from lower court orders which deny defendant's motion for summary disposition based upon the three-year statute of limitations for negligence

actions.[1] The district court and circuit court on appeal held that the statute of limitations was tolled until such time as the plaintiff discovered or should have discovered that his injuries were of a sufficient severity to exceed the no-fault tort threshold. We reverse and remand for entry of a judgment in favor of defendant.

I

On August 14, 1982, plaintiff Anthony Gagliardi (hereinafter plaintiff) injured his right wrist in an automobile accident. Although he did not seek immediate medical attention, later in the day plaintiff experienced swelling and pain in his right hand. The next morning, the plaintiff awoke to find that his right wrist was "bloated." Plaintiff proceeded to visit his family physician, Dr. Williams, who advised him to place hot packs on the wrist and to return the following day. Plaintiff returned to Dr. Williams on Monday, August 16, 1982, because of continuing swelling and soreness of the right wrist.

On August 30, 1982, Dr. Williams took x-rays of the right wrist which revealed arthritic changes aggravated by the trauma of the automobile accident. The diagnosis rendered was of "aggravation of an arthritic condition and fibromyositis, secondary to trauma."

Plaintiff admitted in his deposition that Dr. Williams advised him of the results of the August 30, 1982, x-rays. Further, plaintiff alleged that, as a result of the wrist injury, he was totally disabled for approximately six weeks (August 14, 1982, through September 28, 1982) and then partially disabled until his wrist surgery.

---

[1] MCL 600.5805(1)and (8); MSA 27A.5808(1) and (8).

Plaintiff testified that his wrist never improved following the accident. On the contrary, the aggravated arthritic condition triggered by the accident continually worsened. Wrist surgery was ultimately performed on May 7, 1985, at which time a silastic joint prosthesis was implanted.

On October 24, 1985, plaintiff and his wife filed a complaint against defendant Michael Flack, alleging negligence with regard to the August 14, 1982, automobile accident. In response, defendant moved for summary disposition based upon the three-year statute of limitations, MCL 600.5805(1) and (8); MSA 27A.5808(1) and (8). However, plaintiff successfully argued below that the statute of limitations should be tolled until such time as the plaintiff discovered or should have discovered that his wrist injury constituted a serious impairment of body function. We disagree.

II

The statute of limitations for negligence actions is set forth in MCL 600.5805; MSA 27A.5805:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
>
> *   *   *
>
> (8) The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

Our statute further provides that a negligence claim accrues at the time of the negligent act, regardless of when damage results:

Except as otherwise expressly provided . . . the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results. [MCL 600.5827; MSA 27A.5827.]

The purposes of statutes of limitation are set forth in *Lothian v Detroit*, 414 Mich 160, 166-167; 324 NW2d 9 (1982):

Limitations periods created by statute are grounded in a number of worthy policy considerations. They encourage the prompt recovery of damages, *Buzzn v Muncey Cartage Co*, 248 Mich 64, 67; 226 NW 836 (1929); they penalize plaintiffs who have not been industrious in pursuing their claims, *First National Bank of Ovid v Steel*, 146 Mich 308; 109 NW 423 (1906); they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision", *Jenny v Perkins*, 17 Mich 28, 33 (1868); they relieve defendants of the prolonged fear of litigation, *Bigelow* [v *Walraven*, 392 Mich 566, 576; 221 NW2d 328 (1974)]; they prevent fraudulent claims from being asserted, *Bailey v Glover*, 88 US (21 Wall) 342; 22 L Ed 636 (1875); and they " 'remedy . . . the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert' ". *Lenawee County v Nutten*, 234 Mich 391, 396; 208 NW 613 (1926).

Although statutes of limitation were once disfavored, their merit is now widely recognized. As noted by Justice LEVIN writing for the Court in *Bigelow v Walraven*, 392 Mich 566, 569-570; 221 NW2d 328 (1974):

Why the difference here? It is because of misgivings about the statute of limitations. As one who has himself been led astray in that regard, I appreciate those sentiments. It has, however, come

to be recognized that the statute of limitations is not a disfavored plea but a perfectly righteous defense, a meritorious defense . . . .

The Michigan Supreme Court has judicially created an exception to the statute of limitations in asbestos cases for latent diseases. In *Larson v Johns-Manville Corp,* 427 Mich 301, 319-320; 399 NW2d 1 (1986), our Supreme Court adopted a "discovery rule" which tolls the statute of limitations until the plaintiff discovers or should have discovered the latent disease:

> For all the reasons discussed, we hold that plaintiffs who develop asbestosis may bring a suit within three years of the time they discover or should have discovered their disease. We also hold that plaintiffs who develop cancer which may be related to asbestos exposure, and who have not brought an earlier action for asbestosis, may bring an action to recover damages for cancer within three years of the date they discover or should have discovered the cancer.
> *We emphasize again that the rule we develop in this case for subsequent damages is premised on the unique nature of the asbestos situation and is not applicable in other areas.* [Emphasis added.]

Previously in *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972), the Supreme Court reviewed a products liability case involving an allegedly defective press machine which was manufactured years before the occurrence of the personal injury at issue. Defendant argued that plaintiff's claim was barred by the statute of limitations, while plaintiff asserted that he did not possess a cause of action until such time as he sustained a personal injury. Our Supreme Court agreed with the plaintiff and held that the statute of limitations begins to run

on the date the defect caused the accident, not on the date the machine was manufactured.

In the instant case, plaintiff seeks to invoke the discovery rule to toll the statute of limitations until such time as he discovered or should have discovered that his injuries were of a sufficient severity to exceed the no-fault tort threshold. Plaintiff notes that, in order to recover noneconomic damages in an automobile negligence action, it is necessary for his injuries to exceed a threshold. The Michigan no-fault automobile insurance statute contains the following tort threshold:

> A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle *only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.* [MCL 500.3135(1); MSA 24.13135(1) emphasis added.]

The Supreme Court has defined the threshold of "serious impairment of body function" as follows:

> 1) To recover noneconomic-loss damages, the plaintiff must prove that the injuries he sustained in the motor vehicle accident impaired one or more body functions, and that the impairment of body function was serious.
>
> 2) In determining whether the impairment of body function was serious, the jury should consider such factors as the extent of the impairment, the particular body function impaired, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious. [*DiFranco v Pickard,* 427 Mich 32, 69-70; 398 NW2d 896 (1986).]

Further, if reasonable minds could differ as to

whether a particular injury exceeds the tort threshold, the issue is one of fact to be resolved by the jury:

> 1) The question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer. [*DiFranco v Pickard, supra,* at 38.]

Where reasonable minds could not differ as to the seriousness or nonseriousness of the injury, the threshold issue is a question of law for the court:

> It also recognized that, in certain circumstances, the trial court should decide as a matter of law whether the plaintiff had, or had not, established a threshold injury. Such a decision could be made where "it can be said with certainty that no reasonable jury could view a plaintiff's impairment as serious." *Brooks v Reed,* 93 Mich App 166, 171; 286 NW2d 81 (1979), lv den 411 Mich 862 (1982). If the injury was "so minor" or of a "clearly superficial nature," summary judgment should be granted to defendant. *Id.; Vitale v Danylak,* 74 Mich App 615, 620; 254 NW2d 593 (1977). Conversely, if the injury was so serious that no reasonable minds could differ as to whether the plaintiff had sustained a serious impairment of a body function, the plaintiff should be granted summary judgment. *Watkins v City Cab Corp,* 97 Mich App 723, 726; 296 NW2d 162 (1980); *Cassidy v McGovern,* 86 Mich App 321, 325-326; 272 NW2d 644 (1978), rev'd 415 Mich 483 (1982). [*DiFranco v Pickard, supra* at 51-52.]

### III

Several other no-fault jurisdictions have dealt with the instant issue. The overwhelming weight

of authority from our sister states holds that statutes of limitation are not tolled until the plaintiff discovers or should have discovered that his or her injury exceeds the no-fault tort threshold. *Taber v Niagara Frontier Transit Authority,* 101 Misc 2d 92; 420 NYS2d 692 (1979), aff'd 78 App Div 2d 775; 435 NYS2d 551 (1980), *Carter v Cross,* 373 So 2d 81 (Fla App, 1979), cert den 385 So 2d 755 (Fla, 1980), *Dinesen v Towle,* 3 Kan App 2d 505; 597 P2d 264 (1979), rev den 226 Kan 792 (1979), and *Cappadona v Eckelmann,* 159 NJ Super 352; 388 A2d 239 (1978). Contra *Bond v Gallen,* 292 Pa Super 207; 437 A2d 7 (1981).

The cases from New Jersey are of particular interest, since the New Jersey experience appears to parallel Michigan's. In *Cappadona v Eckelmann, supra,* plaintiff sustained a soft tissue (whiplash) injury which was immediately known following an automobile accident. Nevertheless, the plaintiff waited until after the running of the statute of limitations before filing a negligence action for personal injuries. Plaintiff argued that the statute of limitations should be tolled until such time as the plaintiff knew or should have known that his injury was sufficiently serious to exceed the no-fault tort threshold. The New Jersey appellate court disagreed:

> We disagree with the trial judge to the extent he suggests that the "discovery rule" normally plays a role in determining when a tort claim, surpassing the threshold, accrues. We regard the claim in the present matter as having been barred not because plaintiff had ample time, following knowledge that the threshold was reached, in which to file his complaint within the period allowed by N.J.S.A 2A:14-2, but simply because it was not filed within the normal limitation period and no basis was shown upon which the discovery rule

could properly be held applicable to defer the accrual date of his claim. *The consequences of a wholesale importation of the subjective criteria characterizing the "discovery rule" into automobile personal injury cases which survive the limited tort exemption barrier would not only frustrate the most fundamental aims of the No Fault Law but the legitimate interests served by enforcement of our traditional period of limitations. . . .*

"The economic benefits which justify the whole concept of tort liability exemption would be dissipated by an application of the discovery rule to claims arising under the act. Application of the discovery rule, or any modification of that rule, would necessitate insurance carriers setting aside vast openended reserves until such times as persons who must maintain coverage, or who have a right to receive benefits, actually accumulated medical expenses [in excess of the minimum threshold amount], or as urged in the case at bar, 'discovered' the permanent nature of their injuries." [*Cappadona v Eckelman, supra,* 159 NJ Super 358-359, emphasis added.]

Similarly, the courts in New York have held that it would be unwise public policy to toll the running of the statute of limitations until such time as the plaintiff's injuries are perceived to exceed the no-fault tort threshold:

Plaintiffs reason that no cause of action accrues until they can so demonstrate the mandated "serious injury," or in the alternative if the cause of action is deemed to accrue as of the date of the accident, then, in that event, the running of any statute of limitations is tolled until the injured party can demonstrate a "serious injury."

\* \* \*

[T]o follow Plaintiffs' arguments for delaying the accrual date or applying either a statutory prohibition or condition precedent to suit until the "serious injury" plateau has been met, we believe,

would only serve to impede or defeat the general scheme of the statute (Comprehensive Automobile Insurance Reparations Act, [Insurance Law, §§ 670-678], hereinafter, the "no-fault" law).

The "no-fault" law, as enacted, provided no formal legislative history and is otherwise silent [as] to its purposes and procedures. It is, however, generally accepted that two of the substantive legislative intents were: to remove delay in providing payments for out of pocket losses suffered from an automobile accident and to lessen court case loads by limiting recovery for damages for non-economic loss (pain and suffering) to instances of "serious injury" only.

This Court, therefore, feels compelled to interpret the "no-fault" law in such a manner as to accommodate these purposes.

\* \* \*

. . . *The cause of action continues to accrue at the time the injury is inflicted, notwithstanding that, for the purpose of the "no-fault" law, the damages do not mature to serious proportions until a later date.*

We are not unmindful of the unpredictable nature and vagueness inherent in determining "serious injury." This apparent failing in legislative draftsmanship should not, however, be construed to bar immediate suit, but merely opens more factual issues for determination at trial. [*Taber v Niagara Frontier Transit Authority, supra,* 101 Misc 2d 94-96, emphasis added.]

Although it is generally recognized that the failure of the plaintiff to know the seriousness of his or her injuries does not toll the statute of limitations, it has been held in New Jersey that tolling occurs if the accident causes a latent disease which the plaintiff did not discover or should have discovered. In *Mancuso v Mancuso,* 209 NJ Super 51; 506 A2d 1253 (1986), after the running of the statute of limitations for a minor automo-

bile accident, the plaintiff began to experience
Parkinson's disease, which was allegedly caused by
the accident. Without overruling its prior decisions
(*Cappadona, supra*), the New Jersey court created
an exception to the statute of limitations for latent
diseases. The New Jersey appeals court, however,
also cautioned that the exception did not extend to
known injuries. Further, the statute of limitations
is not tolled if the plaintiff misjudges the severity
of his injuries:

> *We do not intend to suggest by our holding in
> this case that relief should be available to a plain-
> tiff who merely misjudges the severity of a known
> injury or who suffers consequent symptoms or
> ailments reasonably related to the originally
> known causally-connected injury.* We simply recog-
> nize that because Parkinson's disease is not nor-
> mally considered to have any causal nexus to
> trauma, the totality of the circumstances here
> invoke the equitable predicates of the discovery
> rule in order that recovery for that specific and
> separate injury may be pursued. [*Mancuso v Man-
> cuso, supra,* 209 NJ Super 59, emphasis added.]

IV

In Michigan, this Court has refused to apply a
discovery rule to toll the statute of limitations as
to claims for no-fault personal protection insur-
ance benefits. In *Kalata v Allstate Ins Co,* 136
Mich App 500, 502; 356 NW2d 40 (1984), we re-
fused to engage in such "judicial legislation" and
held that the Michigan no-fault act contemplates
accrual of causes of action at the time of the
accident:

> Plaintiff cites the medical malpractice statute of
> limitations, MCL 600.5838; MSA 27A.5838, and

decisions interpreting that statute, and requests this Court to read into the no-fault act a provision tolling commencement of the period of limitation until such time as plaintiff discovered that her injury was related to the automobile accident. Plaintiff fails to cite any authority or persuasive legal reasoning in support of this novel proposition, and we decline to engage in such judicial legislation. The no-fault insurance act expressly contemplates the accrual of an action at the time of the *accident*. Had the Legislature intended a discovery rule for the no-fault insurance act, it could have expressly so provided, as it did for medical malpractice claims. In fact, it appears that the Legislature intended to avoid the application of a discovery rule by stating that the claim accrues at the time of the accident rather than at the time of the injury.

As to no-fault liability claims against third-party tortfeasors, Michigan, like New Jersey, has applied a discovery rule, but only in two pre-*DiFranco* decisions involving latent diseases.

In *Mielke v Waterman,* 145 Mich App 22; 377 NW2d 328 (1985), lv den 424 Mich 873 (1986), the plaintiff was involved in an automobile accident and received what appeared to be minor and superficial injuries. Approximately five years later, the plaintiff developed epilepsy which according to one expert was related to the minor trauma plaintiff received in the automobile accident. In reviewing a motion for summary disposition based upon the statute of limitations, our Court held that the statute of limitations should be tolled until the plaintiff discovered or should have discovered his injury.

Later in *Horan v Brown,* 148 Mich App 464; 384 NW2d 805, lv den 425 Mich 876 (1986), our Court addressed a similar situation in which a latent

disease appeared after the running of the statute of limitations. Although the injury was not specified, in the Court's opinion, the briefs filed in *Horan, supra,* state that, four years after an automobile accident, the plaintiff suddenly and unexpectedly experienced facial paralysis which was allegedly related to a minor automobile accident. Based upon such facts, this Court held that the statute of limitations was tolled by operation of the discovery rule.

Unlike the latent disease cases (Parkinson's disease, epilepsy, facial paralysis), the instant case involves a known injury which was diagnosed approximately two weeks following the accident. X-rays taken on August 30, 1982, revealed degenerative arthritis aggravated by recent trauma. Plaintiff further admitted that he was made aware of such x-ray results. Unlike the cases relied upon by the plaintiff, the wrist injury at issue was immediately known.

Additionally, when *Mielke* and *Horan* were decided the issue of whether an injury exceeded the no-fault tort threshold was largely a question of law for the court to decide. *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), overruled by *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986). Arguably, when the threshold issue was a question of law, a clearer demarcation existed between threshold and nonthreshold injuries. However, now that the threshold is mainly an issue for the jury, what one jury perceives to be a threshold injury could be determined by another jury not to exceed the threshold. Due to the uncertainties inherent in our jury system, in many cases a plaintiff will not know whether his or her injuries constitute a serious impairment of body function until such time as the jury returns its verdict.

V

Although the present case is factually distinguishable from *Mielke* and *Horan* for the reasons discussed above, we also recognize that *Mielke* and *Horan* contain broad, unrestricted language which appears to apply the tolling doctrine to the entire spectrum of auto accident injuries. We expressly disagree with *Mielke* and *Horan* on this issue and conclude that it would be unwise public policy to apply a tolling doctrine to no-fault liability claims.

The indefinite tolling of the statute of limitations until the plaintiff knows or should have known of his or her likelihood of prevailing before a jury on the threshold issue is a standard too indefinite and uncertain to be administered. The purposes of the no-fault act would be thwarted by the unpredictable application of a tolling doctrine to nearly all automobile accident injuries. The security against stale and fraudulent claims would vanish as memories fade, witnesses die, records are destroyed, and scenes are changed. The worthy policy objectives of the statute of limitations would be voided as the judicially created exception consumes the rule.

Accordingly, we conclude that the lower courts erred in tolling the running of the statute of limitations.

Reversed and remanded for entry of judgment in favor of defendant.

MACKENZIE, J., concurred.

MURPHY, P.J. *(dissenting)*. I dissent.

I am in complete agreement with the analysis, reasoning and holdings in both *Horan v Brown,* 148 Mich App 464; 384 NW2d 805 (1986), lv den 425 Mich 876 (1986), and *Mielke v Waterman,* 145

Mich App 22; 377 NW2d 328 (1985), lv den 424
Mich 873 (1985), which reflect the current state of
the law in Michigan.

In *Horan, supra,* a case directly on point, this
Court clearly and unequivocally held that a cause
of action for damages for noneconomic losses from
a serious impairment of body function does not
accrue until the plaintiff discovers or should have
discovered the serious impairment of body func-
tion. The Court in *Horan, supra,* pp 466-468,
stated:

> The sole question on appeal is: When does a
> cause of action for serious impairment of body
> function accrue so as to begin the running of the
> period of limitations? In *Mielke v Waterman,* 145
> Mich App 22; 377 NW2d 328 (1985) [lv den 424
> Mich 873 (1985)], this Court held that a cause of
> action for damages for noneconomic losses from a
> serious impairment of body function does not ac-
> crue until the plaintiff discovers or should have
> discovered the serious impairment of body func-
> tion. We agree.
>
> \*   \*   \*
>
> Under the no-fault act, a prerequisite for main-
> taining a suit for noneconomic loss arising from
> the ownership, maintenance or use of a motor
> vehicle is that the injured person suffer death,
> serious impairment of body function or permanent
> serious disfigurement. MCL 500.3135(1); MSA
> 24.13135(1). Thus, while we hesitate to coin this
> statutory prerequisite as a "fifth element" of the
> plaintiff's cause of action as did the *Mielke* Court,
> we do conclude that the threshold level is an
> essential element of damages without which the
> plaintiff is unable to proceed. *Therefore, all of the
> elements of plaintiff's cause of action in this case
> did not occur until her injuries manifested them-
> selves in a serious impairment of body function.*

We disagree with defendants that this holding
frustrates the legislative purpose of the no-fault

act. The Legislature's purpose in establishing the serious impairment threshold was to "weed out from the tort system claims for injuries less severe than the criteria" under the no-fault act while preserving tort liability for those injuries which are severe and serious. *Byer v Smith,* 419 Mich 541, 546; 357 NW2d 644 (1984). Our holding today is consistent with this purpose.

Nor do we believe our holding will provide the dilatory plaintiff with a method for circumventing the statute of limitations. Any plaintiff bringing such a claim will have to overcome at least two additional obstacles. First, the plaintiff will have to prove that the serious impairment of body function did not in fact occur until sometime after the injury, and second, that the serious impairment of body function was proximately caused by the now-distant injury. These obstacles will stem the chaos envisioned by the defendants. [Emphasis added.]

Moreover, this Court in *Mielke v Waterman,* *supra,* pp 25-27, stated:

Serious impairment of body function is a threshold established by MCL 500.3135; MSA 24.13135 for tort liability caused by ownership, maintenance, or use of a motor vehicle. See *Byer v Smith,* 419 Mich 541; 357 NW2d 644 (1984). The serious impairment of body function is an essential element of the plaintiff's cause of action, not merely a later additional item of damages. In an action like that presented here, an additional element must be added to the four essential elements specified in *Connelly* [v *Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146; 200 NW2d 70 (1972)] for an action for damages arising out of tortious injury to a person: (5) The plaintiff must have suffered a serious impairment of body function. A cause of action for damages for noneconomic losses from a serious impairment of body function cannot have accrued before the alleged serious impairment occurred.

* * *

*Because plaintiff's cause of action did not accrue*
*until he could allege all of the essential elements*
*of the cause of action in a proper complaint,*
*plaintiff's cause of action did not accrue until he*
*discovered or should have discovered the serious*
*impairment of body function.* [Emphasis added.]

The preservation of a party's third-party tort
suit through application of a discovery rule is a
well-reasoned approach in addressing claims such
as this claim. Unlike the majority, I do not believe
that the purposes of the no-fault act are "thwarted
by unpredictable application of a tolling doctrine
to nearly all automobile accident injuries." In my
estimation, there are very few cases in which the
individual will find himself or herself with a seri-
ous injury, linked to an automobile accident,
which for some reason has not fully manifested
itself shortly after the accident. Moreover, the
party who suffers from an injury manifesting itself
later or beyond the three-year period of limitation
faces strong proof problems which serve to keep in
check fraudulent and excessively stale claims. The
party must not only meet the serious impairment
threshold, but must also medically link the inju-
ries to the automobile accident.

The Pennsylvania courts have aligned them-
selves with the reasoning in *Horan* and *Mielke,*
*supra,* and hold that the period of limitation does
not start to run until the claimant knows, or in
the exercise of reasonable diligence should have
known, that the no-fault threshold has been
reached. *Bond v Gallen,* 292 Pa Super 207, 209;
437 A2d 7 (1981), aff'd 503 Pa 286; 469 A2d 556
(1983). A contrary holding would force automobile
accident victims to file precautionary, even spuri-
ous, law suits in order to protect their legal rights

if it would be at all conceivable that their injury might exceed the statutory threshold. 503 Pa 290-291.

Like Michigan, the Pennsylvania courts have sought to avoid the "Catch-22" that would arise if the period of limitation began to run on tort claims that had not yet ripened under the no-fault act. See, e.g., *Dickerson v Brind Truck Leasing*, 362 Pa Super 341, 347; 524 A2d 908, 911 (1987).

Had plaintiff in this case filed a third-party tort claim before the surgical implant of the silastic joint prosthesis, he would likely have been unable to meet the serious impairment threshold. Plaintiff would then have had what eventually amounted to a legitimate and compensable claim unfavorably disposed of by summary disposition. The no-fault law should not encourage such an unjust result. Again, a party's cause of action should not accrue until the party meets the serious impairment threshold. Once that threshold is met, it is from that date that the three-year statute of limitation should apply.

I also see no distinction in *Mielke* and *Horan, supra,* being decided before the date of *DiFranco, supra.* This distinction noted by the majority is irrelevant because the real issue is when the claim accrues. The majority reasons that "due to the uncertainties inherent in our jury system, in most cases a plaintiff will not know whether his or her injuries constitute a serious impairment of body function until such time as the jury returns its verdict." However, that analysis focuses on the plaintiff's prevailing in the cause of action, not when the claim actually accrues. The claim accrues when the plaintiff knew or reasonably should have known that the injuries suffered in the automobile accident constituted a serious im-

pairment of body function, not the date of the
accident.

Finally, the message from the majority's opinion
is clear. If you are injured in an automobile acci-
dent and not sure of the severity of your injuries,
the prudent and necessary course of action is to
file suit and then prolong litigation and wait to see
what the full extent of your injuries will be. This
approach of filing suit before the severity of the
injury is reasonably known would be inconsistent
with the Legislature's purpose in establishing the
serious impairment threshold. That purpose is to
weed out from the tort system claims for injuries
less severe than the criteria under the no-fault act,
while *preserving* tort liability for those injuries
which are severe and serious. See *Byer v Smith,
supra.* For the above reasons, I would affirm the
circuit court.